The People of the State of New York ex rel. Gustavus
A. Duryee, Appellant, v. Emma G. Duryee, Respondent.

Appeal — Incidental Order in Habeas Corpus Proceeding Not
Reviewable by Appellate Division. An order in a habeas corpus
proceeding which does not determine or end the proceeding but continues
it in force, leaving it to be ended by an order to be subsequently made, is
not appealable, under section 2058 of the Code of Civil Procedure, since
it is not a final order; and an order of the Appellate Division reversing it
and dismissing the proceeding is, therefore, without jurisdiction. The
latter order, however, is final, because it dismissed the proceeding and is,
therefore, reviewable by the Court of Appeals.
*People ex rel. Duryee* v. *Duryee*, 109 App. Div. 533, reversed.

(Argued April 1, 1907; decided May 21, 1907.)

Appeal from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered Janu-
ary 30, 1906, which reversed an order of Special Term
denying a motion to dismiss a writ of habeas corpus and
granted such motion.

This proceeding is a controversy between husband and wife,
living in a state of separation, involving the custody of their
infant daughter. It was commenced by the husband, a resi-
dent of this state, upon whose petition a writ of habeas corpus
was issued against the wife. Neither the petition nor the
writ is set forth in the record and the first information fur-
nished by the parties is an order made at Special Term on the
25th of May, 1905, of which the following is a copy :

"A writ of habeas corpus directed to the above-named
defendant, having been duly granted herein, requiring her to
have the body of Agnes G. Duryee before this court on the
first day of May, 1905 ; and said defendant having appeared
on that day by Robertson Honey, Esq., her attorney, and
having then filed a return to said writ under her oath,
together with said writ, and this proceeding having there-
upon been duly adjourned to the 2d day of May, 1905, for the
purpose of allowing said relator to prepare a traverse to said
return ; and a traverse under oath of said relator having been

duly filed by him on said 2d day of May, 1905; and said defendant having failed to produce said Agnes G. Duryee in Court, as directed in said writ, and having moved upon said return and said traverse to dismiss the writ, on the ground that said Agnes G. Duryee was without the State of New York at the time the said writ was served on said defendant and thereafter, and the Court having heard Robertson Honey, Esq., of counsel for said defendant, in support of said motion, and Walter I. McCoy, Esq., of counsel for said relator, in opposition thereto, and due deliberation being had, it is hereby

" Ordered, that said motion to dismiss said writ be and the same is hereby denied ; and it is hereby further

" Ordered, that said defendant Emma G. Duryee have the body of said Agnes G. Duryee before the Supreme Court of the State of New York, at a Special Term, Part II thereof, to be held at the County Court House, County of New York, on the 25th day of September, 1905, at 10 : 30 o'clock in the forenoon of that day ; and it is hereby further

" Ordered, that if said Emma G. Duryee shall fail to have the body of said Agnes G. Duryee in Court, as above directed, a warrant may issue for the commitment of said Emma G. Duryee without further notice, on proof by affidavit of such disobedience."

The respondent alleged in her return that when the writ was served, Agnes, the infant whose custody is in question, " was and still is in the convent of the Sacred Heart, at Naples, Italy." She further alleged that three children were born of her marriage to the relator, Charles, aged thirteen, Marie, aged twelve, and Agnes, aged eleven ; that about seven years ago she was driven from the house of the relator by his cruelty and by his failure to contribute to the support of herself or the children ; that thereupon she removed with them to the state of Rhode Island where they all now reside ; that on the 4th of June, 1900, she procured an interlocutory decree of divorce from the defendant in the Supreme Court of that state and that such decree became final on the 4th of December, 1900 ; that soon after the date last named she and her

children removed to Naples, where the two daughters now are; that in February, 1905, her mother died within the state of New York and it became necessary for her to come here to settle up the estate and when she came she brought her son Charles with her, intending to return to her temporary home in Naples as soon as possible; that owing to the tender years of her daughters she removed them from her temporary home and placed them in said convent for better care and protection during her absence; that at no time during the past seven years has the relator contributed toward the support of herself and children and she selected Naples as her temporary home because many of her friends were living there, her income had more purchasing power there and she could educate her children there in the French and Italian languages; that when the writ was served on her in April, 1905, it was physically impossible for her to go back for Agnes and she was unwilling to intrust her to the care of any other person to make the long journey; that it was also legally impossible for her, because on the 17th of April, 1905, she was ordered by the Supreme Court not to leave the state of New York and that the only restraint or custody exercised by her over the said infant is such as is usually exercised by a mother over her young child.

The relator in traversing the return alleged that the respondent is a resident of the state of New York; that she separated from him without just cause, and that the decree of divorce obtained in the state of Rhode Island is not binding upon him, because he did not appear in the action and no process was served upon him within the jurisdiction of the court which made the purported judgment.

He further alleged that the respondent went to Rhode Island in bad faith, in order to avoid the service of process upon her in this state; that she did not intend to acquire, and did not in fact acquire an actual "residence or domicile there;" that she has never resided there since she procured the alleged divorce; that in taking the children out of this state she violated her written agreement with the relator to allow him

to see his children at certain times and on certain conditions; that he requested her in writing to be permitted to see his children in Naples, but that she made no response to such request.

He denied the allegations of the return relating to cruel treatment, but admitted that he had not, during the past seven years, paid anything toward the support of the respondent or the children. He alleged, however, that during the forepart of said period he was unable to do so and that during the latter part, when his finances had improved, he had offered to help support the children, provided his rights as their father were acknowledged by the respondent. He denied, on information and belief, "that when said defendant went to Naples she had many friends living there," and alleged "that her income is amply sufficient to suitably provide for said children in the State of New York * * * and that if he is granted his rights in regard to said children, he is willing to contribute to their support to the full extent of his means, and that if they are given into his custody he is able and willing to support them entirely."

The allegations of the return that Agnes was in Naples when the writ was served are not effectively denied.

Upon appeal to the Appellate Division the order of the Special Term was reversed and the motion to dismiss the writ was granted.

*Walter I. McCoy* for appellant. The order is appealable to this court. (Code Civ. Pro. § 1997; *People* v. *Carter,* 48 Hun, 55; *Wetmore* v. *Wetmore,* 162 N. Y. 503; *Matter of King,* 168 N. Y. 53; *Matter of Fitzsimons,* 174 N. Y. 15.) The Appellate Division had no authority to entertain the appeal, nor to determine whether the justice at Special Term was authorized to make the order. (Code Civ. Pro. § 2058; *Matter of Larson,* 96 N. Y. 381; *Matter of Husted,* 17 Abb. Pr. 326; *People ex rel. Keator* v. *Moss,* 6 App. Div. 414; *Bryant* v. *Thompson,* 128 N. Y. 426; *Bailey* v. *Kincaid,* 11 N. Y. Supp. 294; *People* v. *Rutherford,* 47 App. Div. 209; *Rees* v. *N. Y. H. Co.,* 112 App. Div. 456.)

*William McArthur* and *J. Campbell Thompson* for respondent.

VANN, J.    The power of the Appellate Division to reverse the order of the Special Term is challenged by the appellant and section 2058 of the Code of Civil Procedure is cited in support of the challenge. That section provides when appeals may be taken in cases arising under the article relating to the writ of habeas corpus issued to inquire into the cause of detention. (Code Civ. Pro. ch. 16, tit. 2, art. 3.) It authorizes an appeal " from an order refusing to grant a writ of habeas corpus   *   *   *   or from a final order, made upon the return of such a writ, to discharge or remand a prisoner, or to dismiss the proceedings.   *   *   *   An appeal does not lie, from an order of the court or judge, before which or whom the writ is made returnable, except " as thus prescribed. The appellant claims that the appeal to the Appellate Division was not taken from an order " to dismiss the proceedings," but from an order refusing to dismiss, from which, as he insists, no appeal is allowed by the statute, and to sustain his position he cites *Matter of Larson* (31 Hun, 539 ; 96 N. Y. 381). The appeal in that case, however, was from an order directing a further return to the writ, not from an order refusing to dismiss the writ. After quoting section 2058, the court said : " This is not an appeal from an order refusing to grant either of the writs named, nor is it from a final order made upon the return of such writs as provided. It is very manifest that the order from which the appeal is taken is not embraced within the provisions of the section cited. The order in question only required a further return to the writs, and upon such an order no appeal lies and the General Term had no authority to entertain the appeal, or to determine . whether the judge was authorized to make the order." While the case is suggestive, it is not controlling, for the order then in question was neither final nor in any other respect such as the statute says may be reviewed.

We think, however, that the appeal to the Appellate Divi-

sion in the case before us was not authorized by law, because
the order made at Special Term was not a final order, and
that the order be final is expressly required by the statute as
a condition of appealing.  It did not determine or end the
proceeding, but continued it in force, leaving it to be ended
by an order to be subsequently made.  If the motion had
been granted and the proceeding dismissed, the order would
have been final, because the matter would have been out of
court and no further order could have been made therein.
If the order had been complied with, evidence taken, the
material issues decided and an order then made dismissing
the proceeding, it would necessarily have been final.  If such
an order would be final, the one made at Special Term was
not, for there cannot be two final orders in the same proceed-
ing, both made by the same court and in force at the same
time.  This construction is in accordance with the section of
the Revised Statutes, which is the prototype of section 2058
of the Code, and which provided that no review should be
had in habeas corpus proceedings " until a final adjudication
shall have been made by such officer upon the claim to be
discharged or bailed." (3 R. S. [6th ed.] p. 282, sec. 85.)
Under that section it was held that there must be a final
adjudication as to the custody of the child before a writ of
review could be issued. (*Husted's Case*, 17 Abb. Pr. 326.)
So, the Appellate Division of the first department held in a
case decided before that now under review that "the law has
expressly taken away the right to appeal from incidental
orders  *  *  *  in these proceedings." (*People ex rel.
Keator* v. *Moss*, 6 App. Div. 414, 419.)

The writ of habeas corpus, as its history shows, is a sum-
mary proceeding to secure personal liberty.  It strikes at
unlawful imprisonment or restraint of the person by state or
citizen, and by the most direct method known to the law
learns the truth and applies the remedy. It tolerates no
delay except of necessity, and is hindered by no obstacle
except the limits set by the law of its creation.  Hence the
legislature commanded that no appeal should be taken from

incidental orders made in the course of the proceeding, as that might cause delay and prolong the injustice. Even the evil of a wrong order, if not vital, was preferred to the danger of delay caused by an appeal therefrom. This, we think, was the theory of the statute, when, contrary to the rule in other cases, it limited appeals in such proceedings to final orders, even when taken to the Supreme Court. When the writ is refused, an appeal is allowed, for that is vital. In either alternative of the remand or discharge of the prisoner, the right to appeal is given, as well as when the proceedings are dismissed. All these are both final and vital, but all else was regarded as temporary and incidental and not to be remedied by an appeal which might postpone the enjoyment of liberty.

The order of the Appellate Division was final, because it dismissed the proceeding, and hence we have power to review their order although they had no power to review the order of the Special Term, as it was not final.

In view of the latitude to be implied from the Domestic Relations Law in cases of habeas corpus affecting the custody of children (§ 40), we should have been better satisfied if the action of the Special Term had been less rigorous. The welfare of the child is the chief end in view and under the circumstances her actual production, involving one ocean voyage if not two, would have been a serious hardship to the child herself. A suitable guardian or custodian would have been necessary, yet no provision was made for expenses of any kind. As the proceeding must go before the Special Term again for suitable action, we venture to suggest, although we cannot now so decide, that the facts should be investigated somewhat before another order of the kind is made. As the matter now stands, however, we are compelled to reinstate the order of the Special Term, as the Appellate Division had no power to review or reverse it.

The order appealed from should be reversed, but without costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, HISCOCK and CHASE, JJ., concur; O'BRIEN, J., not voting.

Order reversed.