THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELIZABETH K. DeLANEY, Respondent, *v.* MOUNT ST. JOSEPH'S ACADEMY OF BUFFALO, N. Y., Appellant.

Fourth Department, July 1, 1921.

**Parent and child — husband does not have absolute control over children — Domestic Relations Law, § 81, applied — children placed in educational institution by father against will of mother will be returned to joint custody.**

A husband and wife, under section 81 of the Domestic Relations Law, are joint guardians of their children with equal powers, rights and duties, and the husband does not have the absolute control over them.   Accordingly, where, during the absence of the mother from home, her husband placed three girls of the age of nine years in a school without the consent of the mother, she, in consideration of the welfare of the children, is entitled to have them returned to the joint custody of herself and her husband.

Said section does not relate exclusively to testamentary guardians.

To that end the court had power in the interest of the children to grant a writ of habeas corpus even though at the time the husband and wife were living together.

APPEAL by the defendant, Mount St. Joseph's Academy of Buffalo, N. Y., from an order of the Supreme Court, made at the Chautauqua Special Term and entered in the office of the clerk of the county of Chautauqua on the 14th day of March, 1921, remanding to the joint custody of the relator and her husband their three children.

*Palmer & Rowe* [*Nelson J. Palmer* and *James O. Moore* of counsel], for the appellant.

*William S. Stearns*, for the respondent.

DAVIS, J.:

Paul DeLaney and Elizabeth K. DeLaney are husband and wife living together. They are the parents of five children, including triplet girls about nine years of age. Recently they have fallen into unhappy differences concerning the education and religious training of their children. Evidently, no well-sustained effort on either side was made in a spirit of accommodation to compose amicably their disagreements, but the quarrel proceeded until it reached the courts.

During the temporary absence from home of the wife, the husband, without her consent, placed these small children in a school known as Mount St. Joseph's Academy. This school was located at Buffalo, about fifty miles from the residence of the parents. Mrs. DeLaney was unable to see her children except under restrictions, and was practically deprived of giving them the benefit of a mother's care, solicitude and discipline, and of having the pleasure and comfort of their society. After ineffectual attempts to regain their custody by persuasion and by her own efforts, she obtained a writ of habeas corpus. The academy made return that it held the children by authority and consent of their father. After a hearing, the court at Special Term made an order directing the return of these children to the joint custody of herself and her husband. The academy has appealed to this court, and

the husband is sustaining the school in its attempt to retain custody of the children. This contest is really one between the husband and wife, each no doubt aided and abetted by others who deem themselves interested in such an unfortunate controversy.

The facts other than as stated, though gone into with great bitterness on the hearing, are of little importance here. Findings of fact were made to which no exceptions were filed. There are only legal questions before us. They involve the consideration of two legal propositions, very plainly and boldly stated on the argument by appellant's counsel. They are, in substance: (1) That the father is the absolute head, " the priest and king " of his own household, and he may take his children and place them in school or elsewhere, no matter how remote from home, regardless of the wife's wishes or consent; (2) that the courts of this State have no jurisdiction or authority in such a controversy, it being a question solely for the father to decide as to what is best for the welfare of his children, in which the State has no concern, and the courts cannot interfere with the plan he has formed or the decision he has made, or take notice of any right asserted by the wife, or of her wishes, or the welfare of the children.

The chief difficulty with the claims of counsel is that they are made a few centuries too late. Under the early Roman law the power of the husband was absolute. The wife's identity was completely merged in that of the husband. The common law was nearly as harsh and severe in its principles, and under it the rights of a woman during coverture were few. In equity, however, the wife's rights were given some further consideration. But by statute and by constitutional amendment in this country, the disabilities of coverture have been largely removed. Married women, as well as unmarried women, now may hold property, make contracts, incur liability for torts, bring suits, have separate earnings and estates, and even vote, equally with men. The husband may still, within limitations, select the home, and upon him rests the obligation of maintaining his wife and children, and he is entitled to the wife's services in the household, and the services and earnings of his children during minority. He is still nominally the head of the household, but his authority must

depend for recognition and obedience on something besides the assertion of autocratic and arbitrary power.

Likewise, has the rule been undergoing change relative to the custody of children. It has been a frequent utterance of the courts in the past that the paramount right to the custody of the children is in the father. This rule was largely due to the fact that he was originally the sole property owner and wage earner, and charged with the duty of maintenance of his family. By statute, by the changed conditions of society, and by the present position of women in industry and all gainful occupations, this principle has been reduced to little more than a phrase. As the common law grew out of ancient statutes, decrees and customs of that time, so the modern law of domestic relations is shaped and determined in the light of new conditions and the customs and policies of modern life. As illustrative of this change in the ancient rule, it is now provided by statute that when the husband and wife, inhabitants of this State, are living in a state of separation without being divorced, the court may, by a writ of habeas corpus, award the custody of their minor children to either parent under such regulations and restrictions and with such directions as the case may require (Dom. Rel. Law, § 70), and in so doing is not bound by the rule of " paramount rights." And in actions for annulment, divorce or separation, the court disposes of the custody of children and makes provisions for their education and maintenance " as the interests of the child require " and " as justice requires." (Code Civ. Proc. §§ 1751, 1771.)

By section 81 of the Domestic Relations Law it is provided that " a married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them." It is urged by the appellant's counsel that this section, of which only a part has been quoted, relates only to testamentary guardians, and cites *Matter of Wagner* (75 Misc. Rep. 419) in which the learned surrogate expresses that as being his opinion. The main part of the section does relate to testamentary guardians, but we do not take the view that it relates exclusively to that subject. If it were so, the Legislature adopted strange language to express its purpose. The language of the statute in the first sentence indicates clearly,

we think, that it was the intent to give a married woman residing with her husband " equal powers, rights and duties " in regard to the custody and control of her children.  It did not limit the right to those having children with property. The weight of authority is against the contention of counsel. (*People ex rel. Beaudoin* v. *Beaudoin*, 126 App. Div. 505; affd., 193 N. Y. 611; *People ex rel. Duryee* v. *Duryee*, 109 App. Div. 533; revd. on a question of practice, 188 N. Y. 440; *Osterhoudt* v. *Osterhoudt*, 48 App. Div. 74; appeal dismissed, 168 N. Y. 358.)

In *People ex rel. Multer* v. *Multer* (107 Misc. Rep. 58), at Special Term upon habeas corpus to determine the right of a father to the custody of his seven-year-old daughter, where the husband and wife, temporarily at least, were living together, Mr. Justice Ross awarded the custody to the mother without recognition of the " paramount " rule.

The spirit in which the Legislature acted is shown by another section of the Domestic Relations Law.  By section 111 (as amd. by Laws of 1913, chap. 569, and Laws of 1915, chap. 352; since amd. by Laws of 1921, chap. 655) adoption of a child under eighteen years of age must be upon consent of the *parents* except where one is under some disability.  If the father alone, as counsel claims, is the arbiter of his children's custody, why should the consent of the mother ·be necessary? If he may, without her consent, dispose of their custody through long periods of time, why not permanently?  But the law does not permit a father in his lifetime to give the custody of his children to another without his wife's consent, or by his will to appoint a guardian for minor children, other than the surviving mother.  (Dom. Rel. Law, § 81; *Matter of Kellogg,* 187 N. Y. 355.)

There are several kinds of guardians.  Those which are given control of property are the most common.  But there are many children not so fortunate as to possess property.  For them, as well as the others also, there is a guardian, sometimes called a guardian by nurture, a guardian by nature, or, if appointed by the court under our statutes, a guardian of the person.  Where a guardian by operation of law is charged with control and management of the property of an infant, the father for practical reasons is preferred.  (Dom. Rel. Law, § 80.)

A guardian by nurture or by nature was originally the father. (1 Black. 461; 2 Kent, 220.) A guardian by nature, under the common law, was entitled to the charge and custody only of the person and not of the personal estate of the ward (*Hyde* v. *Stone,* 7 Wend. 354) and was charged with the duty of providing for the maintenance, education and general welfare of the infant.

It is evident that the Legislature intended to recognize these two classes of guardians, one having control of the property, the other the control of the person of the infant.

The courts have long been given by statute jurisdiction to appoint guardians of the person or property or both of an infant. (Code Civ. Proc. § 2643, formerly § 2821.) It was, we believe, with no purpose to deal with the subject of guardians of property alone that the Legislature acted in changing the common-law rule, where the father's right was paramount, and gave to the mother equal rights as " joint guardian of her children with her husband, with equal powers, rights and duties in regard to them." The granting of this joint authority by the Legislature presumes that both parents will act in a spirit of accommodation, and that neither will seek to exercise arbitrary authority. It is expected that their affection and consideration for each other, and their mutual interest in the welfare of their children, will rise above any question of superior authority, and that differences in judgment will be resolved by themselves in a spirit of amity, rather than by appeal to the courts. Such is and has been the almost invariable result, for it is upon rare occasions that courts are called upon to adjust such differences in the household.

But if the occasion is presented, a court of equity will not find itself lacking in power.

The State has an interest in the children of parents residing within its boundaries. Its power is sovereign as to them. It is interested in their education and welfare. It may and it does by statute say how long they shall attend school, whether or not their parents have other wishes on the subject. (Education Law, § 2; Id. § 621, as amd., and since amd. by Laws of 1921, chap. 386.) It may cause to be made a medical examination of every child attending school, independent of

any opinions which parents may hold. (Public Health Law, § 21-b, subd. 2, as added by Laws of 1913, chap. 559.) It regulates the habits and the place of resort of young children without consulting the views of the parents. (Penal Law, §§ 484, 488.) It forbids their engaging in certain employment (Penal Law, § 485), and will not permit any one, including the parent, to willfully permit the life or limb of a child to be endangered, its morals impaired, or its health injured. (Penal Law, § 483.)

Very reluctantly will courts of equity intervene in cases like this, where differences exist over the custody of children between parents living together. But the reluctance is not based on lack of jurisdiction or authority. While there is no statutory writ of habeas corpus that permits the court to determine the custody of infants, where the father and mother are living together, courts of equity have issued such writs under very similar conditions, where the right to custody was in question, from our early judicial history. They followed the rule at first that the writ was not issued to determine in a summary way the question of guardianship or to deliver the infant to the custody of another, but to deliver the party from improper or illegal restraint. (*Matter of Wollstonecraft,* 4 Johns. Ch. 80.)

Such a writ was issued by Chancellor WALWORTH in 1839 in *People* v. *Mercein* (8 Paige, 47). In that case the husband having become temporarily separated from the wife through some differences, undertook to coerce her to return to him by taking her children from her. He secured one without the aid of the court, and brought proceedings by writ of habeas corpus to obtain possession of a young child which the mother still retained. The claims of the parties were similar to those made here, " the husband supposing that all was to be authority with him, and the wife that all was to be accommodation to her." The chancellor, after inquiry into the facts, declined to take the child from its mother.

The virtues of persistence and the harshness of the common-law rule are both illustrated in the subsequent history of the case just cited. For on the fifth writ the husband, three years later, was permitted to take the custody of this little

82    People ex rel. DeLaney v. Mt. St. Joseph's Academy.

Fourth Department, July, 1921.    [Vol. 198

daughter from her mother. (*People* v. *Mercein*, 3 Hill, 399, Nelson, Ch. J., dissenting.)

But the scope of the writ has broadened and the policies of the courts have become more liberal under our modern practice and in the light of statutes extending the rights of married women. Now the chancery power of the Supreme Court as to the restoration of the child to the care of its parent is limited only by the necessities of the case, having due regard to the welfare of the child. (*Matter of Knowack*, 158 N. Y. 482.)

The court will, in a proper case, interfere even with the parents' control (*Wilcox* v. *Wilcox*, 14 N. Y. 575), and the court, as the guardian of all infants, has inherent power in a proper case to take the custody of the child, even from its general guardian. (*Matter of Lee*, 220 N. Y. 532.)

In cases such as are now before the court it has been so often said that the rule to be followed is consideration of the welfare of the children that it is not necessary to cite authority. In applying this rule the courts will always have in mind, also, that they should not violate one of the most tender and sacred of human sentiments and emotions — the love of a mother for her children.

We believe that the court below very properly declined to become a party to the act of refined cruelty practiced on this mother, by taking from her arms these triplet daughters, after her labor in bearing and rearing them; and that his decision to return them to their home, in consideration of their own welfare, is correct.

The trial court has refused to find that she has been neglectful of her children, as was charged by the husband, and we are not called upon to review that question. But her case would have been much stronger if there was less evidence of her frequent and continued absence from home.

We have no hesitation in determining that the husband has no absolute right to take these young children from the custody of their mother, for no other reason than that he wills so to do; and to declare that the Supreme Court has jurisdiction in the interest of the children to compel their return to their home in joint guardianship and custody of their father and mother. We cannot give direction as to how

these children shall be educated. We can only say that the academy has no legal right to their custody in the absence of the wife's consent; and that the order directing their return to the joint custody of their parents must be affirmed, with costs.

All concur.

Order affirmed, with costs.