THE PEOPLE OF THE STATE OF NEW YORK ex rel. BLANCHE SISSON, Respondent, *v.* HOWARD SISSON, Appellant.*

Third Department, January 15, 1936.

* Modfg. and affg. 156 Misc. 236.

*Charles B. Bechtold* [*Ward N. Truesdell* of counsel], for the appellant.

*Frank W. Barnes* [*H. C. Stratton* of counsel], for the respondent.

McNAMEE, J.  The parties hereto are husband and wife, and about forty years of age, and live together in their common home owned by the appellant, with their daughter nine years of age.  The appellant father is a man of substantial means, a college graduate, and conducts his own business.  The relator mother is a woman of refinement, and for several years has been the victim of arthritis, confining her to her room most of the time.  There is no suggestion that this mother or father has failed in marital duties, or in that mutual respect, helpfulness and confidence common among sensible married people, except as differences have arisen during the past two years in the upbringing of their only child, the daughter Beverly.  Concededly both are fond and circumspect parents, and are anxious for the welfare of their child.  From the record it is apparent that Beverly is healthy in body and mind, and progresses unusually well in her school studies.

The petition contains many allegations of fact and of evidence; but the facts which are significant in law, and which may form a basis for relief here are relatively few.  The contest, in form, is between the mother and father; but the issues are primarily concerned with the interests of the child.  The relator alleges that

Megiddo is a religious sect or cult, that in the main it is Christian, adheres to the Bible, and is composed of moral people; but that its adherents support theories and entertain beliefs not generally accepted by Christians. Among these beliefs the most emphasized are that the person who first teaches a child Megiddo is the mother of that child, that men and women should not marry after joining the cult, that only 144,000 people may enter Heaven, and that only a few of the present generation will be saved. Until recently both parents were active members of the Baptist church.

But the petition charges the appellant with becoming a votary of the Megiddo cult, and with frequently taking the child more than 100 miles from home to the " Mission " conducted by Megiddo at Rochester, without the mother's consent, instilling in the mind of the child the theories and beliefs of Megiddo; that because of his devotion to Megiddo and its practices, he has kept the child away from home about a quarter of the time for a long period immediately prior to this proceeding, caused the child to be dressed in unfashionable wearing apparel, deprived her of many of the usual childish pleasures; taught her burdensome Bible lessons; and that this teaching and training tend to produce queerness, bigotry and fanaticism. It is contended that by these practices the appellant has deprived the relator in an undue degree of the custody and companionship of the child, and thereby deprived the child of the society of its mother and of normal life and development, and has hampered the relator in educating her daughter in accordance with Baptist precept.

In his return the appellant admits his adherence to Megiddo, and that its membership professes beliefs peculiar to itself, including some of those alleged in the petition; but denies that these teachings have an evil or immoral effect upon his daughter, or affect her relations with her mother, and insists that the child enjoys a wholesome and happy home life.

The petition of the relator sought the custody of the child equally with the appellant; but the Special Term made an order completely releasing the child from the guardianship and control of her father, and awarded the exclusive custody and control of the child to the mother, on the ground that it was not for the best interests of the child " to mature in this atmosphere, counseled one way and then another, bewildered, called upon in her immaturity to determine questions beyond most adults, her pleasures and recreations circumscribed, developing not in normal ways but quite the contrary."

No where is it alleged in the petition, nor shown in the proof, that the father is immoral, was knowingly unkind to his daughter,

was financially incapable of providing for her proper support and education; nor is it contended that he was incompetent to manage his affairs, or that he was insane. The relator does not maintain that he failed to conform to any contract touching the religious education of their daughter. (*Weinberger* v. *Van Hessen*, 260 N. Y. 298.) The child herself, although examined privately by the judge, has given no evidence of rebellion or opposition to the treatment accorded her by her father.

In other words, there is no question here of the unfitness on the part of the father to have joint custody of his child with its mother, unless it be that religious belief and practice may constitute such a basis. And in view of the absence of immorality or unlawful purpose in the membership of the cult in question, leading to a violation of positive law, the basis of relief narrows to the question of the religious and philosophic tenets and behavior of the father, and his effort to induce his child to join him in those beliefs and ways of life which he openly avows with others, and which do not contravene the law or the accepted standard of morals.

The spirit underlying the State and Federal Constitutions, and the statutes enacted thereunder, are not in harmony with any purpose on the part of the court to suppress citizens in their lawful exercise of religion. The law does not presume to regulate religious beliefs, or lawful religious practices, however small the number who accept and follow them, or however large the number by whom they may be disapproved. The State does not assume to interfere with parents in the exercise of their natural right to train and educate their children in a lawful manner, whether that training is religious in character, or devoid of religion. Our law is instinct with these principles, and requires no citation of authority.

But it may well be that the course pursued in a given case by one parent is unreasonable, such as to bring undue hardship upon the child, or unlawfully to interfere with the rights of the other spouse. Each of the parents has a natural right, as well as a legal right, to joint custody and control of their child, and the courts will guard against a violation of that right as effectively and adequately as any other legal right founded in nature and good morals. (*People ex rel. DeLaney* v. *Mt. St. Joseph's Academy*, 198 App. Div. 75, 82, 83.) In such a case the court will interfere, not to investigate the soundness of religious doctrines (*Weinberger* v. *Van Hessen*, 260 N. Y. 294, 298; *People ex rel. DeLaney* v. *Mt. St. Joseph's Academy*, 198 App. Div. 75, 82, 83), but for the protection of the physical and moral well being of the child, or to secure the right of equal grade to which the other parent is entitled. The mother's right to have the custody of the infant in question is coequal with that of the

father (Dom. Rel. Law, § 70); and any violation of her right by him in the pursuit of any course, however lawful in itself, will be enjoined.

It is not seriously urged here that the child has suffered any substantial injury which the law will recognize, except regular and prolonged absences from its mother, upon the instance of the father. And in this fact it is apparent that the mother has been in a corresponding degree deprived of her rights. The mother and daughter have natural and legal rights to the companionship of each other, to mutual love and helpfulness, the one to the opportunity to teach and strengthen, the other to the care and guidance that spring from the natural relationship. That the course pursued here by the appellant, as above indicated, has been extreme and unreasonable is clearly evident, and such as the court may not approve, nor ignore. That course has been a violation of the rights of both the child and of the mother. It seems to the court that it would be difficult for the average man of sound mental balance, education and clear understanding of the nature and necessity of family unity, to dissent from this conclusion. We hold that both the relator and the infant are entitled to relief in this proceeding.

The appellant contends further that the court has no jurisdiction of this proceeding, because it was initiated by *habeas corpus* rather than by petition and order. No illegal restraint of the person of the child having been alleged or proved, as understood at common law, a proceeding by petition and order would have been unquestionably correct, and in accordance with ancient practice. (*Wilcox* v. *Wilcox*, 14 N. Y. 575; *Matter of Knowack*, 158 id. 482; *Finlay* v. *Finlay*, 240 id. 429.) This matter, however, came before the court upon full petition, to which the appellant made his return; and a full hearing was had, with all the parties present. Thus there was no substantial difference between the proceeding as actually conducted and that by petition and order, except the initial process, the writ having been substituted for an order to show cause. And this court seems to have indicated heretofore that this practice may be acceptable. (*People ex rel. DeLaney* v. *Mt. St. Joseph's Academy, supra,* 75, 81, 82.) None of the parties understood that the proceeding was based on a common-law restraint of the person, but rather that the only issues to be determined were those affecting the welfare of the child and the right of the mother to joint custody. No one was misled. A prompt hearing and an early determination are of the essence of a proceeding which involves the custody and safety of a child. It is then that " The law does not wait upon these niceties of practice, * * *. It leaps to the rescue." (*People ex rel. McCanliss* v. *McCanliss,* 255 N. Y. 456, 462.) And while the court, in form, " sustained the writ," amounting in substance to a

general decision in favor of the relator, the rights of the parties were regarded, the evidence heard in open court, and the proceeding was determined in precisely the same way that it would have been if initiated by petition. In our judgment the form of the process, in these circumstances, .did not deprive the court of jurisdiction. While the Special Term might have declined to grant the writ, it did not err in assuming jurisdiction on the petition as presented. For this court to hold otherwise upon this record would be mere legalism.

The order of the Special Term should be modified by striking therefrom the provision releasing the infant Beverly Jane Sisson from the guardianship and control of her father Howard Sisson, and by providing, until the further order of the court, that Howard Sisson and his wife Blanche Sisson have the joint guardianship, custody and control of said infant; that said Howard Sisson shall not take said infant from the town in which she resides with her parents, without the consent of the relator; nor take said infant from the home of the relator for a longer period of absence than two hours at any time, and then only after personal notice to the relator of. such intended absence and of the purpose and place of the proposed visitation. And as so modified, the order should be affirmed, without costs.

HILL, P. J., and BLISS, J., concur; RHODES, J., dissents; HEF-FERNAN, J., dissents, in a memorandum.

HEFFERNAN, J. (dissenting). I dissent and vote to affirm the order of the Special Term.

The opinion of the learned justice in the court below (156 Misc. 236) is so clear, comprehensive and convincing that little further need be said on the subject.

To award joint custody of this infant to both parents is but an idle gesture. To do so simply means that the father is put in a position of complete control. To expect us to believe that the mother would be permitted to exercise even a semblance of custody or control under such an arrangement imposes too much upon our credulity. This crippled mother, for years racked on a bed of pain, is neither physically nor mentally able to assert her rights against a dominating husband. To say that he is a religious fanatic is only part of the truth. Not only is he an ardent disciple of the Megiddo teachings but he is obsessed with them. We are not to be understood as frowning upon his religious belief or questioning in the slightest degree his right to worship in accordance with the dictates of his conscience. We have no word of criticism or condemnation of any religion, however false it may appear to us, that has brought

one bit of happiness to a human soul. Where, however, it is sought to use the tenets of any creed to the detriment, annoyance or distress of another then a court of equity will not hesitate to interfere. In the instant case the husband has not only imposed his will upon his wife and child but he has converted his home into a Megiddo Mission. In that home the relator is a stranger, recognized as neither wife nor mother, living out her days of pain under the prying eyes of members of a fanatical cult. The record in this case is replete with proof that the unity and sanctity of the home, which, in our opinion, should be the objective of any creed, are destroyed and family ties are sundered and broken. To free herself and her child from the abnormal practices of an alien faith, imposed upon them by appellant, relator has appealed to the conscience of the Supreme Court. That plea should not go unanswered.

To modify the order appealed from, as suggested in the prevailing opinion, is from a practical standpoint equivalent to its reversal. The appellant, fortified by a determination of this court, occupies a dominant position. Thus armed he is made the master of the ship. Under such circumstances who is so blind as to be unable to visualize the pitiful plight of relator?

Order modified in accordance with opinion, and as so modified affirmed, without costs.