THE PEOPLE OF THE STATE OF NEW YORK ex rel. JACOB BERNOFF, Respondent, against J. VERNEL JACKSON, as Warden of Dannemora State Prison, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

Third Department, June 29, 1945.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Patrick H. Clune* and *Saul A. Shames, Assistant Attorneys-General* of counsel); *Frank S. Hogan, District Attorney (Whitman Knapp, Assistant District Attorney,* and *Alan J. Elliot, Deputy Assistant District Attorney,* of counsel), for appellants.

*Daniel J. Riesner (Harold Jerry* and *Jacob W. Friedman* of counsel), for relator-respondent.

BREWSTER, J. The first order of the Clinton County Court appealed from recited that it *dismissed* relator-respondent's writ of habeas corpus but then therein remanded him " to the custody " of the Warden of Clinton Prison (respondent in the proceeding) with ensuing directions which made arrangements for his transfer therefrom to the custody of the Commissioner of Correction of the City of New York for his production to the Court of General Sessions of New York County for resentence. The second order appealed from denied a motion made by the Attorney-General and the District Attorney of New York County for a resettlement of the first aforesaid order in such manner that it would in form and in words *sustain* relator's writ of habeas corpus and *discharge* him from the custody of the respondent warden as clothed with the authority of its then process, but with similar directions for his further detention and transfer to said Commissioner of Correction for presentation for resentence.

The hearing of the aforesaid appeals was challenged at the outset by relator-respondent's motions for their dismissal upon the ground that said orders are nonappealable. Relator contends that the final order having in terms dismissed his writ, the People have no right of appeal therefrom for the simple reason the statute does not allow it, and, it is claimed, the exclusive statutory grounds for such review likewise preclude an appeal from the second order. The whole controversy raised by the motions to dismiss the appeal, and as well the appeal itself from the second order, stems from a dispute as to a proper choice of a word or two in the original order. After the hearing upon the return of relator's writ the County Court decided that his imprisonment was unlawful because, although his felony convictions of extortions were lawful, the sentence and judgment thereof under which he was imprisoned were considered illegal. However, the order thereupon *dismissed* the writ and remanded him as aforestated.

From an order dismissing a writ the People may not appeal (Civ. Prac. Act, § 1275) and the exclusiveness of the grounds of appeal specified in section 1274 of the Civil Practice Act has been quite generally held to apply to a review of incidental orders in habeas corpus proceedings, the rationale for which has been often stated. (See *People ex rel. Duryce* v. *Duryee,* 188 N. Y. 440.)

It seems that practice in the phraseology of a final order in habeas corpus proceedings has been various in those cases where the court finds relator's immediate custody or restraint unlawful, because the warrant therefor, consisting of sentence and judgment, is illegal, but that he is not entitled to his liberty because of a legal conviction. In some such instances the final order has *dismissed* the writ and remanded the prisoner and then given directions for the transfer of his custody as an incident to arranging for his resentence. This is what was done in the instant case. This practice was sanctioned in the Fourth Department in *People ex rel. LaPierre* v. *Heacox* (231 App. Div. 652) where by a *per curiam* opinion it was called " well-settled practice." The authority for so stamping such practice " well settled " was there given as *The People, ex rel.* v. *Kelly* (97 N. Y. 212) and *People ex rel. Marcley* v. *Lawes* (254 N. Y. 249). In the *Kelly* case (*supra*), while the prisoner had been sentenced to State prison, he was still in the custody of the sheriff of the county when he had his writ of habeas corpus and at the conclusion of the hearing thereon the county judge remanded him to such custody with directions to carry out the sentence. The General Term, while of the opinion that the sentence to a State prison was void, in that the conviction was for a misdemeanor, affirmed the order of the county judge upon the ground that the judgment was not absolutely void and the error in sentence was remediable on appeal rather than in a habeas corpus proceeding. When the case reached the Court of Appeals, (*supra*), it reversed the order of the county judge and the judgment of the General Term as to their directions to carry out the illegal sentence but affirmed as to the direction for a remand of the relator to the custody of the sheriff. It appears that all the way through the relator had remained in such custody. Such therefore was legal custody for the sheriff lawfully held him even though the sentence was illegal. The opinion of BOCKES, J., which was only for an affirmance as to remand to the custody of the sheriff, and in this respect was vindicated in the Court of Appeals, is quite in point as regards the question here at issue. (See *People ex rel. Devoe* v. *Kelly,* 32 Hun 536,

542) where he wrote: " It is true, of course, that all that can be done on *habeas corpus* is either to discharge the prisoner or remand him to the officer having him in lawful custody, and that the court need go no further or say more than to discharge or remand. *But the court must inquire into the cause of detention, and must, in case the prisoner be remanded, see that he is held under lawful authority* * * *. So in this case I have sought to determine the grounds of the relator's detention, why he is held in the custody by the sheriff, and for what purpose he should remain in custody. He is found to be, as I think, in lawful custody, being a convicted criminal awaiting lawful sentence therefor. He should therefore be remanded, not discharged.

" *The case would be quite different were the relator actually in the State prison, and held there for punishment only, under the illegal and void sentence here pronounced. In such case the decision in Ex Parte Lange* (18 Wall. 163) *would require his absolute discharge, because held in custody under an illegal and void process.*" (Writer's underscoring.) It therefore has been well argued that this case is scant authority for the remand to a custody, the indicia of authority for which is illegal, without first discharging from authority as thus clothed.

The word " remand " may mean to recommit or " send back " under the same process under which the relator is held or under different warrant, whether it be mesne or final process.

In the *Marcley case* (254 N. Y. 249, *supra*) the form of the final order dismissed the writ and remanded the relator for resentence, the original sentence having been set aside, and the Court of Appeals did say that the writ was properly dismissed and the prisoner remanded for resentence, citing the *Kelly* case (97 N. Y. 212, *supra*), but it does not otherwise appear that the question at issue was there raised.

As against the foregoing practice, in an instance such as is here presented, it seems that the practice more widely followed is to have the final order *sustain* the writ, discharge the relator from the custody found lacking in authority, and then contain directions for a remand to other and lawful custody with accompanying provisions for its proper transfer to the end that relator will be presented to the court of original jurisdiction for resentence. Instances of this are as follows: *People ex rel. De Normand* v. *Martin* (266 App. Div. 31); *People ex rel. Schali* v. *Deyo* (103 App. Div. 126); see, also, *People ex rel. Gordon* v. *Ashworth* (264 App. Div. 201, affd. 290 N. Y. 285).

Under the latter practice while the remand may temporarily

be to the custody of the same officer from whom he is released by the order sustaining the writ, the second custody has new and lawful warrant by reason of the other provisions contained in the final order. Thus relator becomes released from the unlawful imprisonment although his confinement continues by lawful warrant.

Relator contends that since the final order recites a dismissal of the writ it imports such a failure to discharge him from imprisonment that the People may not appeal therefrom; that, the People's right of appeal being limited by statute, the ways to review are closed. (Civ. Prac. Act, §§ 1274, 1275.) If this be so there is potentiality of confusing developments. Should the Court of General Sessions, which alone has power to pronounce the resentence ordered by the County Judge refuse to do so, or should it repronounce the same sentence, what then? Must relator be shuttled back and forth between Dannemora and New York till his present sentence ends? Are remedies in the nature of mandamus or prohibition available to cut the " Gordian knot "? Contra, if the Court of General Sessions should consider it was bound by the allegedly nonappealable order and follow its directions, who then could appeal so as to have the correctness of the matter determined? The People could not unless the resentence was an illegal one. (Code Crim. Pro., § 518; *People* v. *Heath,* 237 App. Div. 209.) In such a case the new sentence might, under certain situations, conform to the directions of the order of remand and be a legal one. Then the People could not appeal, and yet the original sentence might also have been legal. Thus, in the given case, while relator's whole judgment of conviction has been affirmed by the Court of Appeals (292 N. Y. 230), it could result that the order of the County Judge in thereafter altering it would stand as the pronouncement of a court of last resort.

To my mind the incongruities and anomalies thus envisioned are all avoidable by an obedience required by the plain language of the statute prescribing the procedure, viz:

" § 1256. *Commitment to Another Officer.* Where a prisoner is not entitled to his discharge and is not bailed, he must be remanded to the custody, or placed under the restraint, from which he was taken, *unless the person, in whose custody or under whose restraint he was, is not lawfully entitled thereto; in which case, the order remanding him must commit him to the custody of the officer or person so entitled."* (Writer's underscoring.)

"§ 1262. *Final Discharge of Prisoner.* If it appears that the prisoner is *unlawfully imprisoned or restrained* in his liberty, *the court or judge must make a final order discharging him forthwith.* If it appears that he is lawfully imprisoned or detained, and is not entitled to be bailed, the court or judge must make a final order dismissing the proceedings." (Writer's underscoring.)

Since the County Judge decided that the Warden of Clinton Prison was not *lawfully entitled* to relator's custody or to keep him under restraint by the warrant he then had and which alone then entitled the warden to such custody (Civ. Prac. Act, § 1256), it, of course, appeared that relator was then "unlawfully imprisoned or restrained" and "a final order discharging him forthwith" was called for. (Civ. Prac. Act, § 1262.) Thereupon, the prisoner not being entitled to bail, judicial duty called that there be an order of remand committing "him" to "another officer" viz: the Commissioner of Correction of the City of New York, with appropriate directions for relator's temporary detention, transfer, and presentation for resentence. Such in my opinion is the proper and required practice. Such being followed, then from such final order of discharge the People may appeal and thus the merits of the matter, the legality of the sentence, be reviewed and determined. Such procedure, too, fits in with the requirements of section 1258 of the Civil Practice Act. If the issue on the return of the writ is the legality of the sentence, and in other events of issue, there is abundant reason for the District Attorney to have opporunity to appear, litigate, and appeal if defeated. None of this can he do unless notified, and no notice to him is required except as a required preliminary to the making of an order for the *discharge* of the prisoner from imprisonment when the custody is "by virtue of a mandate." (Civ. Prac. Act, § 1258.) In the instant case no notice was given the District Attorney of New York County, because due to the form of the final order, it dismissed the writ and did not in words deemed sufficiently expressive, discharge the prisoner. Because of the merits of the litigation, viz: whether the sentence was illegal, it was of great importance that the District Attorney should have had notice and opportunity to be heard and contest. Logic as well as the plain literalness of the prescribed procedure compels the same conclusion. What was the claim which called the writ forth? What was called for upon its return? What was determined? The answers are, (1) assertion of unlawful imprisonment, (2) inquiry into the cause of detention, (3) it was decided

the imprisonment was unlawful because the sentence was illegal. The only warrant or authority for relator's being in his then confinement was the sentence. If that was illegal, his imprisonment in Clinton Prison in custody of its warden was unlawful. It was from that he sought to be free. That was the issue determined. The determination below was that relator was right — that his said imprisonment was unlawful and so, in logic, as well as by the statute, he was entitled then to an order of discharge from that particular imprisonment and restraint. And that, in substance and effect, is what the final order provided. Its effective content must prevail over the superfluity or misnomer of a bare recital of the writ's dismissal. The order effectively directs that relator's imprisonment under the process by authority of which the warden then held him shall cease, and that his continued detention and transfer of custody shall be mandated by the other provisions of the order until the new sentence shall have been pronounced. Thus in reality it was a final order discharging the prisoner within the meaning of section 1275 of the Civil Practice Act, and so appealable by the People.

The court below held relator's sentence to be illegal because it was imposed upon him as a second felony offender whereas it was considered that the conviction which brought it forth was his first felony offense. This conclusion was reached upon the following premises: On March 22, 1923, by his plea of guilty, relator was convicted of the crime of unlawful entry, a misdemeanor; on December 15, 1924, he was convicted of the felony of possessing a pistol after a prior conviction (the prior conviction being the one first stated); and on May 19, 1942, after trial by jury, he was convicted on an indictment charging two felony offenses of extortion. Then after acknowledging the prior 1924 felony conviction, he was sentenced as a second offender which sentence he was serving at the time of his writ. On the proof adduced at the hearing, it was held that the first (misdemeanor) conviction aforesaid was invalid in that relator had not been advised of his right to counsel before interposing his plea of guilty and was without aid of counsel. This holding of such invalidity was held to have reduced the second conviction to grade of misdemeanor so that upon the third conviction of extortion he was a first felony offender.

Without considering whether relator's proofs were sufficient to overcome the presumption of the regularity of proceedings had in and the jurisdiction of the courts in which relator's former convictions were obtained, I think it suffices to say that

the law is now well settled that he may not challenge them by the office of a writ of habeas corpus. It was so held recently in *People ex rel. Martine* v. *Hunt* (266 App. Div. 822) wherein motion to appeal was denied upon that precise ground by the Court of Appeals. (294 N. Y. 651, decided January 11, 1945.)

Relator's motion to dismiss the appeal from the final order should be denied; his motion to dismiss the appeal from the order denying the motion to resettle the final order granted, and the final order to the extent it is appealed from should be reversed and relator remanded to the custody of the Warden.

HEFFERNAN, FOSTER and LAWRENCE, JJ., concur; HILL, P. J., dissents upon the ground that the Clinton County court followed procedure approved in *People ex rel. Marcley* v. *Lawes* (254 N. Y. 249).

Relator's motion to dismiss the appeal from the final order denied; his motion to dismiss the appeal from the order denying the motion to resettle the final order granted, and the final order to the extent it is appealed from reversed, without costs, and the relator remanded to the custody of the Warden.