Matter of Christopher Y. v Sheila Z. (2024 NY Slip Op 06631)

Matter of Christopher Y. v Sheila Z.

2024 NY Slip Op 06631

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

CV-23-0373
[*1]In the Matter of Christopher Y., Appellant,
v
Sheila Z., Respondent.

Calendar Date:November 12, 2024

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Craig S. Leeds, Albany, for appellant.
Donna C. Chin, Niverville, Attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Tompkins County (Joseph R. Cassidy, J.), entered January 25, 2023, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for an order directing respondent to produce the subject child.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2014). The mother has had sole legal and physical custody of the child since 2015 and has been the child's primary caregiver since birth (see Matter of Christopher Y. v Sheila Z., 173 AD3d 1396, 1397, 1398 [3d Dept 2019]). By order of Family Court dated January 27, 2020, the father was granted supervised parenting time with the child in New York for two hours every Saturday.[FN1] Pertinent here, the father subsequently filed a violation petition, contending that the mother was improperly interfering with his visitation rights by unduly opposing the visitation supervisor he had proposed. On March 8, 2021, the mother filed her own petition to terminate the father's parenting time and for permission to relocate, revealing that she had moved out of state with the child to an undisclosed location six months prior.[FN2] A virtual court appearance was held on the petitions on March 25, 2021, at which the mother was present with counsel. During the appearance, the mother's counsel asked for the mother's petition to be transferred to "a different state" where the mother was residing, declining to reveal the mother's location on the record and noting that there was a "confidential address" on file with Family Court. Upon confirming that there was no petition pending in the foreign jurisdiction, Family Court declined to transfer the proceeding and adjourned the matter to a future date.[FN3]
The mother was not present for the virtual adjourn date in July 2021, but her attorney appeared on her behalf. Although the mother's counsel acknowledged that the mother had moved out of state without court permission, her attorney noted that this was only after the father made no viable efforts to obtain an appropriate visitation supervisor after his last visit with the child in November 2019. During this appearance, Family Court denied the mother's petition to suspend the father's visitation and ordered a visit to take place in the City of Ithaca, Tompkins County, on August 21 or 22, 2021, subject to the father first retaining an individual designated by the court to act as a visitation supervisor. The court warned that, if the mother failed to produce the child for the August 2021 visit, it would entertain a petition to vacate a child support award that had been issued in her favor.
Subsequently, on August 25, 2021, Family Court granted an ex parte application to discharge the mother's assigned counsel due to an irretrievable breakdown in the attorney-client relationship. During that appearance, counsel revealed that the mother was not living in New York "or any of the contiguous states" and did not have [*2]the resources to bring the child to New York for visitation.
The mother's newly-assigned counsel was present for the next virtual appearance on October 12, 2021, but not the mother. Counsel confirmed that he had reached out to the mother via email to no avail but did not have her phone number or address. The father, in turn, moved to dismiss the mother's petition for failure to prosecute. He also requested an order directing the mother to produce the child in New York so that he could exercise his parenting time. Counsel, who had reviewed the case file, opposed the father's application, noting that the child had not seen the father in a substantial amount of time and that it would be prudent to obtain an evaluation of the child "to see whether renewed contact with the father would be detrimental to her mental health." The attorney for the child (hereinafter AFC) joined in the father's motion to dismiss the mother's petition for failure to prosecute, but also noted that the child had not seen the father for a substantial amount of time and that "a majority of the[ ] missed visits [were] due to the father not finding a supervisor." Although not expressly stated on the record, it is evident from our reading of the transcript that visitation did not occur during the August 21-22, 2021 weekend as directed by Family Court. It is further evident that the father had not retained the individual designated by the court to supervise that scheduled visitation. At the end of this appearance, Family Court dismissed the mother's petition for failure to prosecute and granted the father's violation petition, but declined to find the mother in contempt. The court issued a written order, entered on March 21, 2022, directing the mother to produce the child for visitation with the father and providing that such visitation "shall be supervised by [the court-designated supervisor], or a mutually agreed upon party." The record contains an affidavit of service confirming that the mother was personally served with a copy of this order on June 14, 2022 at a residence in Florida. In the meantime, Family Court issued an order in May 2022 terminating the father's obligation to pay child support pursuant to a December 2015 order.
In August 2022, the father filed a petition in Family Court for a writ of habeas corpus to produce the child in court in New York "in order that [he] be given [his] visitation rights." The petition came on for an initial appearance on September 13, 2022, but was adjourned at the request of the mother's new counsel, who had been assigned the day before.
At the next appearance in October 2022, the mother's attorney revealed that the two letters she sent to the mother were returned, one of which was marked "refused." The attorney also attempted to reach the mother by telephone through a number that the AFC had "tracked down," to no avail. The AFC revealed that she was also unsuccessful in communicating with the child to assess her wishes. A letter written [*3]by the AFC to the mother was also returned as "refused." The AFC was, however, able to confirm that the child had been enrolled in school in Florida for the past two years. The AFC reached out to the school in an attempt to facilitate a virtual meeting but, as of the October 2022 appearance, had not been successful. Given the length of time the child had been living in Florida and her inability to assess the child's circumstances, the AFC took the position that it was "more appropriate [for the father to] bring a petition" in Florida rather than to order the child produced in New York. Family Court found the mother to be in willful violation of its March 2022 enforcement order by failing to produce the child for visitation with the father and held her in contempt. Even so, the court declined to issue a warrant for the mother's arrest and for law enforcement to facilitate the child's production in New York, expressing concern that, in the absence of information about the child's circumstances, such relief might not be in the child's best interests. An order was issued in January 2023 codifying the court's violation and contempt findings, without issuing a writ of habeas corpus. The father appeals, arguing that Family Court abused its discretion in denying his petition for a writ of habeas corpus compelling the child's production in New York.[FN4]
Section 651 of the Family Ct Act provides, as pertinent here, that "[w]hen initiated in the [F]amily [C]ourt, the [F]amily [C]ourt has jurisdiction to determine, . . . with the same powers possessed by the [S]upreme [C]ourt in addition to its own powers, habeas corpus proceedings . . . for the determination of the custody or visitation of minors" (Family Ct Act § 651 [b]; see Domestic Relations Law § 70 [a]). The very purpose of a writ is to compel the production of a child in court to enable the court to resolve a custody or visitation dispute based on "solely what is for the best interest of the child" (Domestic Relations Law § 70 [a]; see Matter of Celinette H.H. v Michelle R., 40 NY3d 1047, 1052-1053 [2023, Rivera, J., dissenting]; People ex rel. Riesner v New York Nursery & Child's Hosp., 230 NY 119, 124 [1920, Cardozo, J.]). Notwithstanding the child's presence in Florida, Family Court — which issued the January 2020 order granting the father visitation rights — had continuing jurisdiction over this proceeding under the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law § 76-a [1]; Matter of Helmeyer v Setzer, 173 AD3d 740, 742 [2d Dept 2019]).[FN5] Accordingly, no jurisdictional impediment existed that would preclude Family Court from issuing a writ of habeas corpus.
Given the mother's disregard for the father's visitation rights and for court orders, as well as her failure to facilitate the AFC's contact with the child, Family Court was well within its right to issue a contempt order (see Labanowski v Labanowski, 4 AD3d 690, 692 [3d Dept 2004]). And yet, we cannot fault Family [*4]Court for its concerns about the potential disruptive impact on the child if it were to issue a writ (see People ex rel. Duryee v Duryee, 188 NY 440, 446 [1907]; Alan D. Scheinkman, Prac Commentaries, McKinney's Cons Laws of New York, Book 14, Domestic Relations Law § 70 C70:6 [discussing "a natural tendency on the part of many judges not to require production of the child" due to the disruption it may cause]). At the same time, without excusing the mother's recalcitrance, we take note that throughout these proceedings the father has not arranged for an appropriate visitation supervisor. As of the October 12, 2021 appearance, the father had not complied with Family Court's directive to undergo a mental health evaluation, which the AFC noted had been ordered "well over a year ago" (see Matter of Christopher Y. v Sheila Z., 173 AD3d at 1399). According to the mother's unchallenged statements made during a January 26, 2022 appearance before a Family Court Support Magistrate, the father is subject to an order of protection until 2032. Beyond these uncertainties, the difficulty here is that Family Court's determination, made without any actual testimony being taken, effectively leaves the parties at an impasse (see generally Matter of Albert T. [Shaquana M.], 202 AD3d 643, 643 [1st Dept 2022]).
"Family Court has broad authority to resolve the parties' dispute" (Matter of Celinette H.H. v Michelle R., 40 NY2d at 1053 [Rivera, J., dissenting]). Under the circumstances presented, we find it appropriate to remit the matter to Family Court for an evidentiary hearing, on notice to the parties, to determine a workable parenting time solution in the child's best interests. The child's personal appearance in court is not required. If the mother fails to participate at the hearing, she risks being found in default with a determination being made solely on the father's evidence.
Garry, P.J., Reynolds Fitzgerald, Fisher and Powers, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as dismissed the application; matter converted to a visitation modification proceeding and remitted to the Family Court of Tompkins County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The record indicates that the father's parenting time was ordered to be supervised upon the recommendation of the Tompkins County Department of Social Services, which believed that the child needed "the protection of a professional experienced supervisor" until the father participated in various services.

Footnote 2: This petition is not contained in the record, but its contents were referenced in various court transcripts.

Footnote 3: Upon the mother's and the attorney for the child's motions, Family Court also dismissed a modification petition the father had filed.

Footnote 4: During the pendency of the appeal, the AFC moved for permission to withdraw as counsel on the ground that she was unable to get in contact with the child and, therefore, could not represent the child's interests. This Court denied the motion (see 2023 NY Slip Op 75081[U] [3d Dept 2023]). The AFC has filed a brief on appeal that "does not take a position" insofar as she has been unable to communicate with the child for over two years. The mother, for her part, declined to file a brief on appeal despite this Court sending her a letter notifying her that if a brief or any other communication was not received by July 12, 2024, the appeal would be submitted on the record and briefs filed by the father's attorney and the AFC.

Footnote 5: We recognize that the statute states that such a petition may be brought "[w]here a minor child is residing within this state" (Domestic Relations Law § 70 [a]), but we eschew a strict reading of the statute (see e.g. Matter of Kassim v Al-Maliki, 194 AD3d 719, 721 [2d Dept 2021]), and will adhere to the modern view that "the presence of the child in the State is not an absolute prerequisite [to the filing of a petition for a writ of habeas corpus], at least where the disputing adults are subject to the jurisdiction of the court" (Alan D. Scheinkman, Prac Commentaries, McKinney's Cons Laws of New York, Book 14, Domestic Relations Law § 70 C70:2).