In the Matter of the Accounting of AUGUSTUS B. KELLOGG et al., as Executors of EDWIN L. BURDICK, Deceased, Appellants.

ALICE H. BURDICK, Individually and as Guardian of MARION BURDICK et al., Respondent.

WILL — WHEN TESTAMENTARY APPOINTMENT OF GUARDIANS IS VOID — WHEN DIRECTIONS TO APPOINTEES AS TO CUSTODY OF FUNDS CONSTITUTE A VALID POWER IN TRUST.  While a testamentary appointment of guardians for testator's minor children, to whom he bequeathed his estate, is void under the Domestic Relations Law (L. 1896, ch. 272) because it excludeds the mother, who survived him, a direction that "all funds and securities belonging to each of my children shall be received, held and paid out by them jointly as such guardians" is effective.  The testator could not ay who should have the custody and control of the property of his

infant children generally, but he had entire power to say who should have the custody and control during their respective minorities of that part of his property that he chose to give to them. He could leave the title in the minors and create a power in trust for the control and management of the fund, and such direction must be regarded as creating a valid power in trust.

*Matter of Kellogg*, 110 App. Div. 472, reversed.

(Argued January 8, 1907; decided February 19, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 10, 1906, which affirmed a decree of the Erie County Surrogate's Court judicially settling the accounts of the executors herein and adjudging that the fourth paragraph of the will of Edwin L. Burdick, deceased, is null and void, and that no trust powers or powers in trust or powers of management were bestowed or authorized by said will upon the executors as executors, trustees or otherwise, and further adjudging that said executors pay over to Alice H. Burdick, as guardian of her three infant daughters, the balance of funds remaining in their hands belonging to said infants amounting to $32,381.23.

Edwin L. Burdick died in the city of Buffalo February 27th, 1903, leaving his widow, Alice H. Burdick, and three daughters; all of the children are minors. By the first and second subdivisions of his will the testator provided for the payment of debts and funeral expenses and several specific legacies.

The remainder of the will is as follows: "*Third.* I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every description, to my three children (naming them), to be divided equally between them, share and share alike, and in case either of my said children shall die before the age of twenty-one, I direct that the share of her so dying shall be equally divided between the surviving children, share and share alike. *Fourth.* I nominate and appoint Charles S. Parke and Risley Tucker to be guardians of the persons of my three children, and Augustus

B. Kellogg, George H. Dunston and George C. Miller to be the general guardians of the estates of each of my three children, and I direct that all funds and securities belonging to each of my children shall be received, held and paid out by them jointly as such guardians. *Fifth.* (Testator nominates and appoints said Kellogg, Durston and Miller executors.) *Sixth.* I authorize and empower my said executors to sell and dispose of at public or private sale and at such times and in such manner and for such sums as to them, in the exercise of their best judgment, may seem most expedient, and to convey all or any part of my real estate or personal estate, and to continue and carry on, or close out and wind up, my interest in the various business enterprises in which I may be engaged, as to them may seem best and most expedient for all parties concerned. *Seventh.* I hereby revoke all former wills by me made."

*George C. Miller* and *William C. White* for appellants. The fourth paragraph of the will conferred upon the executors named therein trust powers of management of the estates of the children bequeathed by the will of Edwin L. Burdick. (*Post* v. *Hover*, 33 N. Y. 593.) The legacies to the children are conditional only, and show an intention to postpone the payment of their shares during the period of their minorities. (*Mead* v. *Maben*, 131 N. Y. 255.) The intention of the testator should govern. (*Du Bois* v. *Ray*, 35 N. Y. 162; *Lambert* v. *Paine*, 3 Cranch, 129; *Johnson* v. *Brassington*, 86 Hun, 106; *Lawton* v. *Corlies*, 127 N. Y. 100.)

*Frederick B. Hartzell* for respondent. The power to appoint a testamentary guardian is statutory. (2 R. S. [6th ed.] 167, §§ 1, 2, 3.) The surviving parent only has power to appoint. (L. 1893, ch. 175; L. 1896, ch. 272.) The mother having been appointed guardian of the infant children by the surrogate, she takes the control and management of the estates as well as the persons of her wards. (*Matter of Alexandre*, 70 N. Y. S. R. 431.) To spell a trust, or a power in trust, into the will would violate the natural and legal rights of the mother.

(*Kevan* v. *Waller*, 36 Am. Dec. 391; *Matter of Briggs*, 39 App. Div. 485.) The attempted appointment of guardians being void, the court will not declare them trustees. (*Brigham* v. *Wheeler*, 49 Mass. 127; *Matter of Hawley*, 104 N. Y. 250.)

CULLEN, Ch. J. By the will of Edwin L. Burdick, deceased, he provided: "*Fourth:* I nominate and appoint Charles S. Parke and Risley Tucker to be guardians of the persons of my three children, and Augustus B. Kellogg, George H. Dunston and George C. Miller to be the joint guardians of the estates of each of my three children, and I direct that all funds and securities belonging to each of my children shall be received, held and paid out by them jointly as such guardians." The testator left him surviving three daughters, all infants, and a widow, the mother of said infants. Subsequent to his decease and the probate of his will the widow was appointed general guardian of the infants. The question arose whether the property, which, under the terms of the will, to which it is unnecessary to refer, was given to the infants should be paid over to the mother as their general guardian or to the three persons named as guardians in the clause of the will quoted, who are the appellants in this case. The surrogate directed payment of the funds to the general guardian, and this direction has been affirmed by the Appellate Division.

That, under the statute of 1893 (Ch. 175; subsequently re-enacted in Domestic Relations Law, ch. 272, Laws 1896), which constitutes a married woman joint guardian of her children with her husband, and restricts to the surviving parent the authority to appoint a testamentary guardian, the appointment of the appellants as guardians of the persons and property of the infants was void, cannot be questioned. But this concession does not dispose of the controversy. While the testator could not say who should have the custody and control of the property of his infant children generally, he had entire power to say who should have the custody and control during their respective minorities of that part of his

property that he chose to give to them. He might have created a trust in her favor during the minority of each child, in which case the legal title during the trust term would be in the trustee. He was not, however, bound to adopt that course. He could leave the title in the minors and create a power in trust for the control and management of the fund. A power may be created for any lawful purpose and to do any act which the grantor might himself do (Real Property Law, sec. 111; *Belmont* v. *O'Brien*, 12 N. Y. 394; *Downing* v. *Marshall*, 23 N. Y. 366), and the statute equally applies to powers over personalty. (*Cutting* v. *Cutting*, 86 N. Y. 522.) Therefore, had the testator instead of appointing the appellants guardians of his children with the direction "that all funds and securities belonging to each of my children shall be received, held and paid out by them jointly as said guardians," said in express terms, "I direct said persons to have the same care, custody and control during their minority over the property I give my children that a guardian would have," it would have created a valid power in trust (*Blanchard* v. *Blanchard*, 4 Hun, 287; affd., 70 N. Y. 615), and to my mind he has said substantially the very same thing.

There have been several cases in which a testator not legally authorized to do so has assumed to appoint the guardian of minor beneficiaries under his will. In such cases, with but a single exception, so far as I can find, the appointment of a guardian over such property as the testator bequeathed or devised has been upheld either as a trust or a power in trust. The exception is *Brigham* v. *Wheeler* (49 Mass. 127), where a testator, having given real and personal property to the children of his nephew, assumed to appoint their guardian. It was held that the appointment was void and the will could not be construed so as to create a trust estate in the guardian. The case was disposed of summarily without any review of the authorities. On the other hand, in *Fullerton* v. *Jackson* (5 Johns. Ch. 278), where a grandfather assumed to appoint his executors guardians of his

grandchild, Chancellor KENT held that while the grandfather had no such power he had a right to annex conditions to his gift, and that the rents and profits of the property devised should remain in the hands of the executors. In *Post* v. *Hover* (33 N. Y. 593) a testator appointed a guardian of minor grandchildren and directed that his son, whom he named guardian, should have the control and management of the real estate devised to the grandchildren during their minority. It was held that while the appointment of guardian was void, and no valid trust created, still there was constituted a good power in trust. Judge DENIO said : " A grandfather, it is true, has no power to appoint a guardian for his grandchildren by last will. This testator thought otherwise, and by assuming to do so, he may be supposed to indicate the kind of authority which he intended to commit to his son John. He intended to confer such a charge of, and power over, the estate, as a guardian may rightfully exercise over the lands of his ward." In *Matter of Lichtenstadter* (5 Dem. 214), where a testator appointed a guardian of his grandchild, it was held by Surrogate ROLLINS that though the attempt to create a guardian was abortive the person appointed was a trustee and entitled to the possession of the fund without obtaining letters of guardianship. In *Blake* v. *Leigh* (Ambler's Rep. 306) it was held that " the grandfather has no power to appoint guardians of his grandson, it being a right vested in the father ; but anyone can give his estate on what conditions he pleases." In *Grimsley* v. *Grimsley* (79 Ga. 398) it was held that under the appointment of one as testamentary guardian of children of a person other than the testator the appointee became a trustee for such children and held the property devised as such. In *Camp* v. *Pittman* (90 N. C. 615) it was held that the appointment by a testator of a testamentary guardian whom he was not authorized to appoint operated to define the power and authority over the estate conferred upon the guardian. In *Vanartsdalen* v. *Vanartsdalen* and *Cornell's Appeal* (14 Pa. St. 384) there was a similar attempt on the part of a testator to appoint a guardian of his

grandchildren.   The contest was between the testator's son-in-law, the father of the infants, and the testator's son, whom he appointed guardian of the children.   The son-in-law sought to get possession of the property devised to his children by the testator.   He was defeated, the court saying : " Here the testator devises an estate to his grandchildren, and for satisfactory reasons best known to himself chooses to commit the custody and management of it to his own son instead of to his son-in-law.   It does not need the authority of Lord HARD-WICKE (doubtless referring to *Blake* v. *Leigh*) for the position that any one can give his estate on what conditions he pleases."   In *Bush* v. *Bush* (2 Duvall [Ky.], 269) it was held that while no other person than a parent can appoint a guardian by will, any other testator may appoint a trustee to take charge of a bequest made to infants.   It thus appears that with the exception of the Massachusetts case the uniform current of authority sustains the validity of the appointment of the appellants to exercise over the property bequeathed by the testator the same power as would be exercised by a legally constituted guardian.

The orders of the Appellate Division and of the Surrogate's Court should be reversed and the fund be directed to be paid over to the appellants to be held by them during the minority of the infants respectively, with costs to appellants to be paid out of estate.

EDWARD T. BARTLETT, J. (dissenting).   It is conceded that the fourth paragraph of the will appointing testamentary guardians is void in view of the provisions of the Domestic Relations Law, section 51, which reads as follows : " A married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them. Upon the death of either father or mother, the surviving parent, whether of full age or a minor, of a child likely to be born, or of any living child, under the age of twenty-one years and unmarried, may, by deed or last will, duly executed, dispose of the custody and tuition of such child during its

minority or for any less time, to any person or persons. Either the father or mother may in the lifetime of them both, by last will duly executed, appoint the other the guardian of the person and property of such child, during its minority. A person appointed guardian in pursuance to this section shall not exercise the power or authority thereof unless such will is admitted to probate, or such deed executed and recorded as provided by section twenty-eight hundred and fifty-one of the Code of Civil Procedure."

The history of the legislation in this state resulting in this section quoted is interesting as disclosing the intention to further. enlarge the rights of married women.   The provisions of an ancient English statute were embodied in our Laws of 1787 (Chap. 47, § 11), which were afterwards incorporated into the Revised Statutes.   This statute authorized a father to dispose of the custody and tuition of his infant children, the wife having no rights in the premises.

By the Laws. of 1862 (Chap. 172) the existing statute was amended so as to require the consent of the mother to a testamentary appointment by the father, but this legislation in favor of the wife was repealed by the Laws of 1871 (Chap. 32).   Then followed Laws of 1893 (Chap. 175); Laws of 1896 (Chap. 272), and the revision of the whole subject by the Domestic Relations Law (§ 51 and following).

The judgments of the Surrogate's Court and the Appellate Division declaring the fourth paragraph of the will void do not rest on the concession of the appellants that such is the fact, but upon the face of the will and the plain reading of the statute quoted.   It is the contention of the appellants that notwithstanding the will and the statute there can be spelled out of the former the intention of the testator to create a power in trust which will vest the property passing under the will in the executors as trustees, thereby conferring upon them the absolute control of all property to which the three infant children of the testator are entitled and stripping the widow of every vestige of the rights and powers conferred upon her by statute, as the guardian of her children ; it fol-

lows that such will be the effect, for in depriving her of the control of the property it practically removes the infants from her personal supervision to a very great extent. It leaves her vested with a barren, worthless right.

It would have been, of course, competent for the testator to have left his property to his infant children in trust during their minorities and named such trustees as he saw fit. In that event it would have been incumbent upon him to have indicated the scope and purposes of the trust and defined explicitly the powers of the trustees. This he did not do.

We come back then, *first*, to the will and the statute and their effect upon the theory of a power in trust; and, *second*, to the decisions on which the assumption of such a power rests. The statute (Domestic Relations Law, section 51) in its opening sentence creates a married woman the "joint guardian of her children with the husband, with equal powers, rights and duties with regard to them." Either dying, the survivor may by deed or will "dispose of the custody and tuition of such child, during its minority, or any less time, to any person or persons." Then follows a provision that in the lifetime of both either may appoint the other the guardian of the person and property of the child. The legislature has thus gone far towards completing the emancipation of the married woman from the bondage of the common law; the statutes relating to married women from 1848 until a recent date have established in them the right to acquire, hold and dispose of property, and the legislation we are now considering has made them the equals of their husbands in the custody, tuition and property of their children.

An examination of the will discloses the fact that the testator, regardless of the statute and the rights it confers upon a wife, did precisely what it prohibited, and appointed separate male guardians of the persons and the estates of his three minor children — two of them under fourteen years of age. The only direction he gives to the guardians of the estate is the following: "I direct that all funds and securities belonging to each of my children shall be received, held and paid

out by them as guardians." As to the guardians of the persons, no direction or suggestion is given.

The will confers upon the executors (who are also named as guardians of the estates of the infants) power to sell and convey real estate and personal property, and to continue or wind up the business of the testator. This record does not disclose why the testator ignored his wife in making his will, nor is it of the least importance, for the question now to be decided is of great public moment. Is a testator who, by his will and the appointment of guardians therein, finds himself barred by the statute in his attempt to deprive his wife of the rights and powers conferred upon her by that statute, entitled to invoke a principle of equity and have his will in that regard turned into a power in trust? To ask the question is to answer it. No case has been cited where such a practice has been permitted under the statute as it now exists. It is an anomaly to appeal to equitable principles under such circumstances. The testator has given his estate to his infant children, and to that extent his will can be sustained, but he ought not to be permitted to deprive the widow of her statutory rights under a mere legal fiction he is in no position to invoke.

The cases cited in support of the appellants' contention are so different in their facts as to be, in our opinion, of no authority on this appeal. In the case of *Blake* v. *Leigh* (Ambler's Repts. part 1, 306), decided in 1756, Lord HARD-WICKE, Chancellor, said: " The grandfather had no power to appoint a guardian of his grandson, it being a right vested in the father; but any one can give his estate on what condition he pleases; and the father has in this case submitted to the will. There are instances where grandfather has given his estate to grandchild, and appointed guardians of his estate and person ; and if the father did not submit to the will, the court has made the father's opposition work a forfeiture of his son's estate."

In *Fullerton* v. *Jackson* (5 Johns. Ch. 278) a grandfather devised to his grandchild certain real estate, and directed that

the rents and profits be applied by his executors to the education of such grandchild during his minority.   He also directed that his executors be his guardians and direct his bringing up and education as in their judgment appeared proper.   The surrogate had appointed a guardian of the infant without regard to this provision in the will.   Chancellor KENT said : " In the present case the testator intended that the rents and profits of the land devised during the minority of the grandson, should be appropriated by the executors toward his education. "He had a right to annex that condition to the gift; and I do not see that I am required by any principle to call those rents and profits out of the hands of the executors and place them under the discretion of the guardian.   The defendants have no control of the infant, but those rents and profits must be left to their control; and if the guardian will not allow them to appropriate the same in such manner as they shall deem best towards the education of the infant, he must be educated with other resources ; and the defendants will be responsible to the infant when he comes of age for those rents and profits with interest thereon."

In this case the question of a power in trust is not involved.

In *Post* v. *Hover* (33 N. Y. 593) a grandfather devised certain real estate to three grandchildren and directed one John Hover, his son, to take charge of and have the management of the infants' estate during their minority and support them and their mother; he also constituted his son John guardian of the three grandchildren and one of the executors of his will.   One of the principal questions in the case was whether John Hover took any estate in the lands devised to the grandchildren.   It was argued that if John Hover did take an estate or interest in these lands it would create an unlawful suspension of the power of alienation.   DENIO, Ch. J., said (pp. 599–600) : "But I am of opinion that John Hover did not, by the terms of this will, take any estate in the part of the homestead devised for the benefit of the grandchildren.   There are no words importing a devise to him and he is not called a trustee.   Ample power of management and

a right to receive the rents and profits are indeed given, but these duties could very well be executed under a trust power. So far as the grandchildren, who are the principal beneficiaries, are concerned, they might be performed by a general guardian.   *   *   *   A guardian, as is well known, has no estate in the lands of his ward; but only a power of management. A grandfather, it is true, has no power to appoint a guardian for his grandchildren by last will. (*Fullerton* v. *Jackson*, 5 Johns. Ch. 278.) This testator thought otherwise, and by assuming to do so he may be supposed to indicate the kind of authority which he intended to commit to his son John.   He intended to confer such a charge of and power over the estate as a guardian may rightfully exercise over the lands of his ward.   This repels the idea of the devise of a legal title nearly as strongly as if he had possessed the power which he attempted to exercise."

It is difficult to see what application this case has to the one at bar.   We have here an executor who has conferred upon him, according to the judgment of the court, "such a charge of and power over the estate as a guardian may rightfully exercise over the lands of his ward."   The learned judge seems to have used the reference to a trust power by way of illustration.   He said : " Ample powers of management and a right to receive the rents and profits are indeed given, but these duties could very well be executed under a trust power." Assuming, however, that the last two cases are to be deemed authority for the proposition that interested parties may appeal to the doctrine of a power in trust in order to cure an otherwise invalid provision of the will, we are, nevertheless, of opinion, for reasons already stated, that they have no application to the situation now presented.

In this connection the respondents have called attention to the case of *Brigham* v. *Wheeler* (49 Mass. 127). A testator, by his will, gave real and personal property to the children of his nephew and their heirs and assigns forever, and appointed their father to be their guardian, without giving bonds, "for the purpose of receiving and managing said

property so given." It was held that said appointment of a guardian was void, for want of authority in the testator, and that the will could not be so construed as to vest an estate in trust in the father of the children.

In view of the peculiar facts in the case at bar and the statute cited the decisions of the courts of other states are not in point.

The questions in this case were raised by the widow in the proceedings instituted by the executors under the will to obtain their final discharge. In that proceeding the widow appeared as the general guardian of the person and estate of her daughter over fourteen years of age, and the temporary guardian of the persons and estates of her two daughters under fourteen years of age. She filed objections to the account of the executors and secured a decree declaring the fourth paragraph of the will null and void, and directing payment to her of the sum or $32,381.23 and accrued interest thereon, as the guardian of the persons and estates of the infants. This decree has been affirmed by the Appellate Division.

. The judgment of the Appellate Division affirming the decree of the Surrogate's Court of Erie county should be affirmed, with costs.

HAIGHT, VANN and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.; WERNER, J., concurs with EDWARD T. BARTLETT, J.; HISCOCK, J., not sitting.

Ordered accordingly.