**ALLEN, Collector of Internal Revenue, v. NUNNALLY.**

No. 12953.

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1950.

Fred S. Gilbert, Jr., Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., John P. Cowart, U. S. Atty., Macon, Ga., for appellant.

M. E. Kilpatrick, Atlanta, Ga., for appellee.

Before HOLMES, McCORD, and BOR-AH, Circuit Judges.

HOLMES, Circuit Judge.

This action was brought in the court below by Winship Nunnally against the Collector of Internal Revenue to recover income taxes alleged to have been erroneously assessed against him in 1939, 1940, and 1941. The issue arose as to the year 1939 from a determination by the Commissioner that the net income from a trust, which was created in 1931 by J. H. Nunnally, father of Winship Nunnally, was taxable to Winship Nunnally under Section 22 of the Internal Revenue Code, 26 U.S.C.A. § 22. As to the years 1940 and 1941, the issue arose from a determination by the Commissioner that a part of the income from the same trust, which was administered in those years for the benefit of Winship Nunnally's two daughters, was taxable to him under Section 167(a) of the Internal Revenue Code, 26 U.S.C.A. § 167(a). The lower court allowed Nunnally's claim for the full amount for each of the years. This appeal is only with respect to that portion of the judgment which held that appellee was not taxable on the income of the trust for the year 1939. The facts may be summarized as follows:

By an instrument dated April 3, 1931, J. H. Nunnally, the father of appellee, created a trust for the benefit of the trustor's five grandchildren. In so doing, he transferred certain stocks owned by him to the Central Hanover Bank and Trust Company of New York, and designated it as trustee under the instrument. On the day before the creation of this trust, J. H. Nunnally made substantial gifts to each of his two children, Winship Nunnally and Frances Nunnally Goodrich. He gave the former securities of a value approximately double that of the securities which he had put in trust for his grandchildren. The securities that he gave to Frances were of approximately the same value as those placed in trust for the grandchildren. Subsequent to the creation of the trusts, he made other substantial gifts to his son and daughter.

J. H. Nunnally was seventy-one years old when he created this trust. He was living in Miami, Florida, where he was participating in the operation of one of his candy stores. He had suffered a stroke in 1929, and was gradually retiring from business. His wife divided her time between California, Georgia, and North Carolina, as the Florida climate did not agree with her. Winship Nunnally was an officer of the Nunnally Candy Company, and had an annual income of about $100,000 per year. He lived with his wife and four children in Atlanta, Georgia, until 1933 when he was divorced. After the divorce, his two sons lived with him and the two daughters lived with his wife. Frances Nunnally Goodrich lived with her husband and daughter in California. All of J. H. Nunnally's grandchildren were relatively young, and since the trust was to remain in effect for a considerable period of time, he felt that it was important that someone other than the trustee should have the power to make amendments to the trust, if necessary, for the protection and benefit of the beneficiaries, his grandchildren. He discussed with his son the various administrative responsibilities and powers to be granted by the trust instrument, and decided that his son should be the one to hold this power of amendment. He had great confidence in his son's business ability, and knew that his son could best protect the investments in the trust by checking on the corporate trustee as to the changing of investments. Winship Nunnally, being the father of four of the beneficiaries and uncle of the other, would be in a much better position, it was thought, to adapt the trust to the changing needs of the beneficiaries than would the New York trustee.

Winship Nunnally received no income from the trust during the year 1939, 1940, or 1941. Until August, 1933, the income from the trust was distributed to him and Frances Nunnally Goodrich for the benefit of their children. After that date, no income was made to or through him for any purpose. He supported both of his sons out of his own personal funds, and allowed the income to accumulate for them. After they reached their majority, the income was paid directly to them. Following the divorce in 1933, the trustee made direct payments of

income to the former Mrs. Nunnally for the support of the two daughters, whose custody she received under the decree of divorce.

By executing separate instruments, Winship Nunnally amended the trust so as to change the amount of income the grandchildren were to receive and to defer, for a short period beyond the age of twenty-five, the distribution to them of their portion of the corpus. The trust was further amended to permit the trustee to pay legal expenses incurred by it or Winship Nunnally in connection with the trust, and to reimburse him and Mrs. Goodrich for any expenses, including tax liabilities, which either of them incurred as a result of their relation to the trust. The last amendment, dated December 28, 1939, terminated all power of alteration, amendment, or revocation, originally conferred on Winship Nunnally.

Each of the beneficiaries, in their respective federal income tax returns for the years 1939, 1940, and 1941, reported the amounts of ordinary income thus distributed to them during these years, and paid federal income taxes thereon. The trustee filed federal income-tax returns for each of these years, and paid income taxes on that portion of the net income not distributed to the beneficiaries. Claims for a refund of these taxes were made, but no refunds have been made.

The controlling issue presented here is whether, during the year 1939, the appellee had the power to require the income or any part of the trust estate to be paid to him for his personal use and benefit. If he did, then the tax was legally assessed to him for that year; if he did not, he was not subject to taxation on the trust income, and is entitled to a refund of the amount claimed by him. The language relied on by appellant to support his contention is contained in the following portion of Article 13 of the trust instrument: "Winship Nunnally shall have the power, whenever in his judgment it is to the interest of said trust estate to do so, by written instrument properly executed and acknowledged, to revoke this trust or alter or amend any term or provision thereof, including change of trustee or

beneficiaries in any way and to any extent that may seem to him desirable except that the said Winship Nunnally shall have no power to diminish the compensation of the trustee."

In determining the nature and extent of the powers granted to appellee by the trust instrument, both sides agree that we must apply the laws of the state of New York. Under the statutes and decisions of New York, the powers so given were powers in trust and could not be exercised for the trustee's own benefit. His powers to amend the provisions of the instrument were expressly limited to such changes as in his judgment would further the interest of the trust estate. To use his fiduciary powers in such a way as to benefit himself would be a breach of trust and a violation of the laws of New York. See Carrier v. Carrier, 226 N.Y. 114, 123 N.E. 135; Heyman v. Heyman, Sup., 33 N.Y.S.2d 235; Osborn v. Bankers Trust Company, 168 Misc. 392, 5 N.Y.S.2d 211. The general rule is to the same effect. In Vol. 2 of Scott on Trusts, at page 975, we find the law stated as follows: "Where the person upon whom the power of control is conferred is neither a co-trustee nor a beneficiary but is a third person otherwise unconnected with the administration of the trust, the power is ordinarily conferred upon him as a fiduciary and not for his own benefit. In such a case, although the holder of the power is not a trustee of the estate, he owes duties to the beneficiaries with respect to the exercise of the power."

The various amendments made by appellee to the trust instrument did not affect the fiduciary nature of his powers. The district court found as a fact that the taxpayer's purpose in effecting these amendments was solely in the interest of the grandchildren of J. H. Nunnally. This was because the taxpayer doubted the advisability of having the trustee turn over too much income or principal to the young beneficiaries, who did not have sufficient experience in handling money. As to the amendment that provided for the payment of legal expenses incurred by the corporate trustee and Winship Nunnally, it seems to us that such expenses would ordinarily be

an obligation of the trust, whether provided for by amendment or not. The provision for reimbursement to Winship Nunnally and Frances Goodrich of any expenses incurred by them for taxes or otherwise was merely an effort to protect them from personal losses. It in no way indicated that the taxpayer thought he had a right to benefit personally from the trust. It showed his justified feeling that neither he nor his sister should suffer a personal financial loss as a result of the fiduciary duties imposed upon them.

In 1937, the trust instrument was amended to provide that after January 1, 1938, trust income in the amount of $4,000 per year for each of the taxpayer's daughters should be paid to his former wife, in whose custody the daughters were. The amendment also provided for the payment of an equal sum to Frances Nunnally Goodrich for the benefit of her daughter, and likewise changed the provisions of the trust with reference to Winship Nunnally's two sons. Appellant argues that this amendment amounted to a use of the trust income by the taxpayer to satisfy his obligation under the divorce decree entered in 1933 to make payments to each of his daughters for their support, unless they received as much as $2,500 per year from a blood relative of Winship Nunnally. The divorce agreement settling these property matters seems to have been made in the light of the existence of this trust. The obligation imposed on the taxpayer in this agreement with reference to annual payments for the support of his daughters was wholly contingent. It did not exist and would not arise at all unless the income from the trust avaliable for the benefit of the daughters, together with any income which they had available from any other blood relative of Winship Nunnally, failed to equal the specified amount. As a matter of fact, the obligation never came into existence, because the income from the trust available for the benefit of the daughters always exceeded the specified sum.

We agree with the district court that the administrative powers delegated to appellee, including the power of amendment contained in Article 13, were powers in trust, and

that he had no right to exercise them to make amendments to the trust for his own benefit. The amendments that were made by him did not change the nature of his powers. We have not found any intent on his part to make such a change, and his powers under the original trust instrument remain powers in trust. The judgment appealed from is affirmed.