James Cameron CLARK, Jr., and Minot
K. Milliken, as Executors of the Estate
of Edith S. Fabbri, Deceased

v.

**UNITED STATES of America.**

Civ. No. 1073.

United States District Court
D. Maine, N. D.

Jan. 7, 1960.

Charles L. Kades, c/o Hawkins, Delafield & Wood, New York City, Philip R. Lovell, Ellsworth, Me., for plaintiffs.

Peter Mills, U. S. Atty., Portland, Me., Rufus E. Stetson, Jr., Tax Division, Department of Justice, Harvey G. Schneider, Washington, D. C., for defendant.

GIGNOUX, District Judge.

This case is here on remand from the United States Court of Appeals for the First Circuit for consideration in the first instance of a wholly new contention with respect to a "very difficult question of New York law" [1] first raised by plaintiffs on their appeal from a judgment entered by this Court for the defendant.[2] A somewhat detailed recital of the history of this litigation and a restatement of the facts of the case, although the latter are fully set forth in the prior reported opinions of the Court of Appeals and of this Court, are essential to an understanding of the issue now presented to this Court.

The principal action was initiated by the executors of the estate of Edith S. Fabbri, deceased, seeking recovery of an alleged overpayment of $175,199.49 federal estate taxes, with interest. The ultimate question presented is whether or not the corpus of a trust created by Mrs. Fabbri during her lifetime is includible in her gross estate, and therefore taxable, by reason of section 2038 (a) (2) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2038(a) (2), which provides that the gross estate of a decedent shall include the value (at the time of death) of all property "[t]o the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *."

The trust here involved was established by Mrs. Fabbri, a resident of Maine, on October 22, 1926. On that date she executed an indenture in New York by which she conveyed securities to The Bank of New York and Trust Company, as trustee, to pay the income "to and for the use of the Grantor during her life, and upon Grantor's death, in case her daughter, Teresa Fabbri Clark, survives the Grantor * * * to Grantor's said daughter during her life * * *." Upon the death of the survivor of these two, the principal was to be paid to the then living descendants of Teresa, *per stirpes*, or if none, as directed by Teresa in her will, or, in default of appointment, to those persons who took under the residuary clause of the grantor's will.

Article II provided for the management of the trust fund. In particular, it provided:

"[T]he Trustee may hold the securities hereinbefore named, which are the subject of this trust, unless requested to sell or exchange all the same or any portion of the same by the following persons, namely: J. William Clark and/or John V. Irwin [or their successors] * * * and the Trustee shall make such investment and reinvestment of the Trust Fund as it and the said persons * * * shall agree upon * * *."

Article III, which, with Article V, is at the heart of the instant controversy, provided for termination of the trust as follows:

"III. The trust and trusts created by this instrument are hereby specifically declared to be terminable either in whole or in part, and the principal constituting the said trust fund shall be payable either in whole or in part, at any time upon said J. William Clark and said John V.

---

1. Clark v. United States, 1 Cir., 1959, 267 F.2d 501, 506.

2. Clark v. United States, D.C.D.Me.1958, 167 F.Supp. 54.

Irwin, or their successor and successors, or by those who may be appointed by the Grantor in the place and stead of said J. William Clark and of said John V. Irwin or of either of them, signing and causing to be delivered to said Trustee a written and duly acknowledged instrument directing that the said trust or trusts or certain parts thereof terminate and come to an end, and/or that the principal constituting the said Trust Fund, or certain parts thereof, be paid out, in which event the principal thereof to the extent so directed shall forthwith be paid by the said Trustee to the person or persons then in being, who are entitled, at the time or times when said direction is given to the income thereof under the provisions of this instrument."

Article IV provided for the joint appointment by the income beneficiary and the trustee of successors to Clark or Irwin, or their successors, in the event of death.

Article V reserved to the grantor the right to appoint a substitute for Clark or Irwin:

"V. The Grantor has the right and power to revoke the appointment as contained in paragraphs numbered II and III, hereof, with respect to J. William Clark and/or John V. Irwin, and to appoint another person in the place and stead of each and/or of either or both of them who shall have full power and authority to exercise all the powers given said J. William Clark and/or said John V. Irwin in and by the provisions of this instrument. The revocation and appointment to be effective shall be evidenced by a duly acknowledged instrument in writing, to be filed herewith."

J. William Clark died in 1930, and Dave H. Morris, Jr., was duly appointed his successor pursuant to the reserved power in Article IV. The parties agree, as indeed seems apparent from the terms of Article V, that Morris' appointment was not revocable by the grantor.

Mrs. Fabbri died in Maine on December 17, 1954. At the time of her death she had never exercised her power under Article V of the trust to remove Irwin. Nor had the Article III power of termination been exercised in whole or in part during her lifetime.

■ The initial proceedings in this Court revolved around the applicability to the case at bar of the rule of Loughridge's Estate v. Commissioner, 10 Cir., 183 F.2d 294, certiorari denied, 1950, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609. The Loughridge rule, which has been adopted to some extent in Treas.Reg. § 20.-2038–1 (1958), may be summarized as follows: If a trustee has the power to revoke a trust, and if the creator of the trust has the power to revoke the trustee's appointment *and appoint himself in his place,* then the creator of the trust will be deemed to have the revoking power of the trustee. To escape the force of Loughridge, the plaintiffs argued, first, that under New York law Mrs. Fabbri could not have appointed herself in the place of Irwin, and secondly, that the Loughridge rule was not applicable in any event because it applies only to trustees and Clark and Irwin were not trustees. This Court rejected both contentions, holding that under New York law Mrs. Fabbri, during her lifetime, could have substituted herself for Irwin and that under Loughridge she must be treated for federal estate tax purposes as if she had done so. Hence, this Court concluded that the trust fell within section 2038(a) (2) because Mrs. Fabbri held at the date of her death the power, in conjunction with Morris, to terminate the trust, which was equivalent to the power to "alter, amend, or revoke" the trust within the meaning of the statute.

Before argument of the plaintiffs' appeal from the judgment of this Court, the Court of Appeals decided in favor of the Government the essentially similar case of Van Beuren v. McLoughlin, 1 Cir., 1958, 262 F.2d 315, certiorari de-

nied, 1959, 359 U.S. 991, 79 S.Ct. 1120, 3 L.Ed.2d 979. The plaintiffs thereupon advanced a wholly new contention before the Court of Appeals, upon which they placed primary reliance. Their new position was, contrary to their theory in this Court, that Irwin was a trustee and that, even if Mrs. Fabbri had succeeded in substituting herself for Irwin, she would have been forbidden to exercise Irwin's power of termination because of the prohibition contained in section 141 of the New York Real Property Law, which reads, as amended in 1945 (and, in a respect not here relevant, in 1947), as follows:

"§ 141. *Capacity to take and execute a power*

"A power may be vested in any person capable in law of holding, but can not be exercised by a person not capable of transferring real property. A power, vested in a person in his capacity as trustee of an express trust, to distribute principal to himself cannot be exercised by him; if the power is vested in two or more trustees, it may be executed by the trustee or trustees who are not so disqualified; if there is no trustee qualified to execute the power, its execution devolves on the supreme court * * *."

The Court of Appeals, while concurring in the views expressed by this Court as to Mrs. Fabbri's power under New York law to appoint herself in the place of Irwin and as to the applicability of Loughridge to this case, decided in its discretion to remand the case for consideration in the first instance by this Court of the plaintiffs' new argument with respect to the applicability of section 141. The Court of Appeals stated (267 F.2d at page 507):

"While we no doubt have power to go ahead and dispose of the case finally, which we would surely do if we felt entirely confident of the issue as to the New York law, yet as a matter of discretion we think that the judgment of the District Court should be vacated and the case remanded to that court for consideration in the first instance of this new argument raised by the taxpayers with respect to the New York law. Perhaps some of the ambiguities which cloud the case can be clarified by factual evidence proving, for example, the nature of the corpus and the intention of the parties to the trust indenture."

In accordance with the mandate of the Court of Appeals, the action came on for a further hearing in this Court on September 25, 1959. The factual evidence, all presented by plaintiffs, consisted of an intermediate account of the trustee Bank as of the date of Mrs. Fabbri's death, and of the depositions of Irwin, Morris and an officer of the Bank. In addition, plaintiffs introduced certain documentary evidence relative to the legislative history of the 1945 amendment which added the second (and presently crucial) sentence to section 141 of the New York Real Property Law, and the oral testimony of the eminent Richard R. Powell, Emeritus Dwight Professor of Law at Columbia University, who testified at length as an expert on the New York law of trusts and powers.

The intermediate account establishes that the trust fund at all times from the date of its creation until the date of decedent's death consisted entirely of personal property. The depositions reveal that Mrs. Fabbri, divorced at the time of the execution of the indenture, was a charming lady, difficult to deal with in a business way, with spendthrift habits. She maintained two large homes, in Bar Harbor, Maine and in New York City, enjoyed entertaining on a lavish scale and was constantly living beyond her rather substantial means. Her daughter was wont to importune her for money, and she found it difficult to resist the appeals of her family and charities. The trust was established upon recommendation of the family attorney, Irwin, in order to protect her from constant expenditures of principal and also from her own poor business judgment.

At the same time, Mrs. Fabbri was fearful that if some provision allowing the withdrawal of principal were not inserted into the indenture, unexpected emergency expenses, such as large medical bills, would place her in an embarrassing financial position. To meet this situation, Article III was created. Article V was also included at her suggestion in case she lost her confidence in either Clark or Irwin. It is apparent from the depositions that the trust was not established primarily as a tax-saving scheme.

The depositions further disclose that as a matter of actual practice Irwin and Clark, and later Morris, took an active part in the administration of the trust. The Bank has never undertaken the purchase or sale of securities without first obtaining their consents, and where their consents have been withheld, the contemplated transactions have not been consummated. Investments were discussed only in a very general way with Mrs. Fabbri. Only once, according to the depositions, was there any talk of termination. Mrs. Fabbri wanted to give an endowment to the Episcopal Church that would realize an income of $10,000 to $12,000 a year. She wished to get the requisite capital "out of my trust." She was quickly dissuaded by Morris.

The legislative history offered in evidence by the plaintiffs included a Memorandum for the Honorable Thomas E. Dewey, Governor of the State of New York, re Assembly Int. 516 and Senate Int. 435, submitted by the Committee on Law Reform of the Association of the Bar of the City of New York, and a Report of the Committee on Law Reform, printed in Vol. 83, Set B of the Reports of the Association of the Bar of the City of New York (1944). These documents disclose that the 1945 amendment to section 141 of the New York Real Property Law as finally enacted by the legislature was sponsored by the Association, originally in a slightly different form, in order to codify what its sponsors believed to be the judicially developed law of New York prohibiting a trustee who is also a beneficiary of a trust from exercising a power of invasion of the trust corpus in favor of himself as beneficiary. They further indicate that the purpose of the amendment was to insure that no federal estate tax be imposed upon the death of a trustee-beneficiary because a court, such as this one, might mistakenly assume that under New York law he could join in the exercise of such a power to invade.

Professor Powell was asked on direct examination whether under New York law the grantor of a hypothetical trust, which was the same in all relevant detail as the instant trust, had she appointed herself in the place of one of two persons originally given power to terminate the trust, could then in conjunction with the other person have terminated the trust. He answered as follows: "Under the question asked, this grantor, bound by judicial decisions of New York and by statute of New York, would have been barred from exercising the power to terminate the trust, thereby acquiring the corpus for her own benefit." Professor Powell testified at length in support of his opinion. The bases of his opinion were reiterated in excellent brief, reply brief and oral argument on behalf of the plaintiffs.

The Court must nevertheless again direct entry of judgment for the defendant.

In order to avoid any possible misconception of the issue before this Court on this remand, it should be stated at the outset that there are certain matters which are either not now in dispute between the parties or are already the law of this case as the result of the prior decisions of this Court and of the Court of Appeals. Thus, both sides agree that the trust indenture must be construed and the nature and effect of the powers granted thereunder must be determined in conformity with the laws of the State of New York. Further, both this Court and the Court of Appeals have held that under New York law Mrs. Fabbri during her lifetime could have appointed herself in the place of Irwin, and that if

she could then have exercised Irwin's power in conjunction with Morris to terminate the trust, the corpus of the trust is properly includible in her gross estate under section 2038(a) (2).

The Court of Appeals has also held that Mrs. Fabbri was not a trustee of an express trust, and would not have been such if she had substituted herself for Irwin. Clark v. United States, supra at page 506 of 267 F.2d. Accepting this, plaintiffs have conceded on remand (and Professor Powell so testified) that section 141, which speaks only in terms of the powers of a "trustee of an express trust," is not directly applicable.[3] Thus plaintiffs' present position, which is their second change of position since these proceedings were first before this Court, is that as a matter of common law decision the New York courts would apply the rule of section 141 to disqualify Mrs. Fabbri, in the event of substitution, from exercising the power in question. Their argument is actually twofold. First, they contend that the New York courts would apply section 141 "by analogy." Second, they assert that the New York courts would hold directly applicable the common law rule existing in New York apart from statute. However, the distinction is not significant to the outcome of this proceeding, for, as recognized by the Court of Appeals (267 F.2d at page 506), "so far as the state law of New York is concerned, which is binding upon us, the result would be the same."

As previously indicated, the corpus of the present trust has always consisted entirely of personal property, and it may be wondered whether the rule embodied in section 141 of the Real Property Law can have any possible application, "by analogy" or otherwise, to a trust of personal property. However, there is a long history in New York of the assimila-tion of statutory and judicial rules relating to trusts of real property, to rules relating to trusts of personal property. See, e. g., Matter of Kellogg, 1907, 187 N.Y. 355, 80 N.E. 207, 13 L.R.A.,N.S., 288; Matter of Moehring, 1897, 154 N.Y. 423, 48 N.E. 818; Cutting v. Cutting, 1881, 86 N.Y. 522. It has accordingly been held sub silentio in many cases that section 141 of the Real Property Law is applicable to personal property as well. See, e. g., Lenzner v. Falk, Sup.1947, 68 N.Y.S.2d 699; In re Willcockson's Will, Sur.1947, 77 N.Y.S.2d 271. See also Casner, Estate Planning 571n.42 (1956); Rev.Rul. 54–153, 1954–1 Cum.Bull. 185. Professor Powell so testified, and the Government appears so to concede.

There also appears to be little room for doubt as to the "background tendency" of the New York courts to treat rules applicable to trustees of express trusts as equally applicable to the holders of powers in trust. See Carrier v. Carrier, 1919, 226 N.Y. 114, 125, 123 N.E. 135, 138; Osborn v. Bankers Trust Co., 1938, 168 Misc. 392, 5 N.Y.S.2d 211; Matter of Brooklyn Trust Co., 1936, 163 Misc. 117, 295 N.Y.S. 1007. Hence, even though section 141 is not directly applicable to powers of non-trustees, it may be conceded that the New York courts would probably apply the principle embodied in section 141 to the holders of powers in trust. In any event, it is clear that the judicially developed law of New York, which exists quite apart from any statute, is to the effect that neither a trustee nor a holder of a fiduciary power may participate in the exercise of his power for his own benefit. Carrier v. Carrier, supra; Rogers v. Rogers, 1888, 111 N.Y. 228, 18 N.E. 636; Matter of Lawler, 1st Dept. 1926, 215 App.Div. 506, 213 N.Y.S. 723; Lenzner v. Falk, Sup. 1947, 68 N.Y.S.2d 699; Heyman v. Hey-

---

3. It therefore becomes unnecessary for this Court to consider the further difficulty suggested by the Court of Appeals that section 141 might in any event be inapplicable because, even if Mrs. Fabbri had substituted herself for Irwin, she had no power in that capacity "to distribute principal" to herself, but would have had a power merely to terminate the trust, in which event it would then have become the duty of the corporate trustee, in accordance with the terms of the trust, to pay over the corpus to the life beneficiary. Clark v. United States, supra at page 506 of 267 F.2d.

man, Sup.1942, 33 N.Y.S.2d 235; Osborn v. Bankers Trust Co., 1938, 168 Misc. 392, 5 N.Y.S.2d 211. See Robertson v. DeBrulatour, 1907, 188 N.Y. 301, 80 N.E. 938; Allen v. Nunnally, 5 Cir., 1950, 180 F.2d 318.

The controlling issue presented here thus becomes whether under New York law Mrs. Fabbri's power to terminate, if she had succeeded Irwin, would have been a power in trust or otherwise a fiduciary power. For it follows from what has been said that if it would have been such a power, the law of New York would have prevented its exercise by her, and the trust property is not includible in her gross estate under section 2038 (a) (2). If it would not have been such a power, there would have existed no restraint upon its exercise by her, and the trust property is properly includible in her gross estate. It is this Court's conclusion that under New York law it would not have been such a power.

Powers as they existed at common law were abolished in New York in 1828 by section 73 of the old Revised Statutes, which appears in its present form as section 130 of the Real Property Law and now reads, as follows:

"§ 130. *Effect of article*

"Powers, as they existed by law on the thirty-first day of December, eighteen hundred and twenty-nine are abolished. Hereafter the creation, construction and execution of powers, affecting real property, shall be subject to the provisions of this article; but this article does not extend to a simple power of attorney to convey real property in the name and for the benefit of the owner."

The same revision created a new statutory scheme and made the new statute "Of Powers" a complete and exclusive code on that subject. This statute exists today as Article V (sections 130–183) of the Real Property Law. Under this Article all powers are classified as either general or special, and as either beneficial or in trust (N.Y. Real Prop. Law § 133).

General and special powers are defined in sections 134 and 135, respectively. Although the power to terminate involved in this case is undoubtedly a special power, this distinction is not of any consequence to the present issue. Beneficial powers and powers in trust are defined in sections 136 through 138, as follows:

"§ 136. *Beneficial power*

"A general or special power is beneficial, where no person, other than the grantee, has, by the terms of its creation, any interest in its execution. A beneficial power, general or special, other than one of those specified and defined in this article, is void."

"§ 137. *General power in trust*

"A general power is in trust, where any person or class of persons, other than the grantee of the power, is designated as entitled to the proceeds, or any portion of the proceeds, or other benefits to result from its execution."

"§ 138. *Special power in trust*

"A special power is in trust, where either,

"1. The disposition or charge which it authorizes is limited to be made to a person or class of persons, other than the grantee of the power; or,

"2. A person or class of persons, other than the grantee, is designated as entitled to any benefit, from the disposition or charge authorized by the power."

Thus, a power is in trust when any person or class of persons, *other than the grantee* of the power, is entitled to benefit from its execution. On the other hand, a power is beneficial when by its terms only the grantee of the power is interested in its execution.

It is evident from a mere reading of the foregoing statutory provisions that the power to terminate in Mrs. Fabbri's hands simply would not have fitted within the definitions of powers in trust. Had she substituted herself for Irwin,

no person, other than Mrs. Fabbri who was the only person designated by the indenture to receive the principal upon termination, would have been entitled to the proceeds or any benefit resulting from its execution, within the meaning of sections 137 and 138.

Conversely, Mrs. Fabbri's power to terminate would have fallen squarely within the statutory definition of a beneficial power since she was the only person with any "interest in its execution," within the meaning of section 136. Her daughter Teresa, as the second life beneficiary, acquired an "interest" in the execution of the power only after her mother's death. While her mother lived however, Teresa's only interest, along with that of the other remaindermen, was a mere negative concern that the power *not* be exercised. It would be a strained and wholly unwarranted construction of the statutory phrase "interest in its execution" which would include such a negative concern. Furthermore, such a construction would lead to the absurd result that a simple power to terminate or revoke a trust, reserved by the grantor in the first instance, would not be a beneficial power, and hence could not be exercised by the grantor, in any case where there were any other persons, either life beneficiaries or remaindermen, named in the trust instrument whose interests would be eliminated by the exercise of the power. No one takes this extreme position, and indeed the New York statutes expressly recognize that the grantor of a trust may reserve an effective power to revoke or terminate it. See N.Y. Real Prop. Law § 145.

■ Nor does the Court see any compelling logic in plaintiffs' contention that since Irwin's power to terminate was held by him in trust, Mrs. Fabbri's power to terminate, if she had succeeded Irwin, would necessarily have been similarly in trust. The Court must agree

that Irwin's power to terminate was in trust. N.Y. Real Prop.Law § 138. But the fallacy in plaintiffs' argument becomes apparent upon analysis of just what Irwin's trust was. He owed a fiduciary obligation to Mrs. Fabbri not to act capriciously in refusing to exercise the power. Korowitz v. Kraft, Sup.1952, 113 N.Y.S.2d 836. He owed no duty, however, to Teresa and the remaindermen to refrain from exercising the power if it should be in Mrs. Fabbri's interest that he do so. Witherbee v. Commissioner, 2 Cir., 70 F.2d 696, certiorari denied, 1934, 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678. See also Reinecke v. Smith, 1933, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109; Welch v. Terhune, 1 Cir., 126 F.2d 695, 697–698, certiorari denied, 1942, 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519. Even supposing that the incidents of the power would have remained the same in Mrs. Fabbri's hands, she would have owed no fiduciary obligation to any person other than herself. It thus becomes meaningless to speak of the power to terminate in her hands as a power in trust. Furthermore, upon Mrs. Fabbri's substitution for Irwin, since she would have been the sole beneficiary of the power, it would have fallen precisely within the statutory definition of a beneficial power contained in section 136,[4] and would have no longer fitted within the definitions of powers in trust in sections 137 and 138.

Plaintiffs argue, nevertheless, that a number of New York cases support their contention that the power to terminate in Mrs. Fabbri's hands would have been a fiduciary power, which could not have been exercised by her for her own benefit. The decisions cited by plaintiffs fall into two distinct categories.

The first line of cases are those which have held that a beneficiary of a trust, *other* than the grantor, who has been expressly designated by the grantor as a trustee or an executor cannot exercise a power to distribute principal or

---

4. It may be noted that while section 136 speaks in terms of a "grantee" of a power, this term is defined by section 132 to include a "person in whom the power is vested * * * by * * * reservation."

income to himself, even though he is among the class of persons the grantor intended to benefit. Rogers v. Rogers, 1888, 111 N.Y. 228, 18 N.E. 636; Matter of Peabody, 2d Dept. 1950, 277 App. Div. 905, 98 N.Y.S.2d 614; Matter of Lawler, 1st Dept. 1926, 215 App.Div. 506, 213 N.Y.S. 723; Lenzner v. Falk, Sup. 1947, 68 N.Y.S.2d 699; In re Rachlin's Will, Sur.1954, 133 N.Y.S.2d 151; In re Bender's Will, 1951, 200 Misc. 768, 105 N.Y.S.2d 15. See Allen v. Nunnally, 5 Cir., 1950, 180 F.2d 318. The controlling consideration which underlies these decisions is set forth in the leading Rogers case (111 N.Y. at page 237, 18 N.E. at page 638): "The will *did not attempt* to unite in the same person the office of trustee and the interest of beneficiary." (Emphasis supplied.) In each instance the court found in the instrument a clear intent by the grantor to make the third person a fiduciary and held that it would be wholly inconsistent with such intent to permit the fiduciary to exercise the granted power for his own benefit to the detriment of the other beneficiaries. The distinguishing feature of the case at bar is that Mrs. Fabbri did not purport to make herself a trustee or otherwise to subject herself to fiduciary obligations. On the contrary, as stated by the Court of Appeals (267 F.2d at page 506), "[s]he held at her death the power to terminate the trust, not in any capacity as trustee of an express trust, but for the reason that she had reserved to herself in her capacity as grantor of a trust the power to remove Irwin and substitute herself in his place."

Cases in which the grantor, as distinguished from a third person, reserved a power form the second group of cases cited by plaintiffs in support of their position. Carrier v. Carrier, 1919, 226 N.Y. 114, 123 N.E. 135; Heyman v. Heyman, Sup.1942, 33 N.Y.S.2d 235; Osborn v. Bankers Trust Co., 1938, 168 Misc. 392, 5 N.Y.S.2d 211. See Fifth Ave. Bank of New York v. Nunan, D.C.E.D. N.Y.1945, 59 F.Supp. 753. Plaintiffs overlook, however, a vital distinction between the powers reserved by the grantors in the cited cases and the power reserved by Mrs. Fabbri. In those cases the powers reserved by the grantors were powers of investment and management, similar to those contained in Article II of the instant indenture, which the courts expressly found to have been retained by the grantors for the sole benefit of the trust beneficiaries. In none of them was there an express reservation by the grantor of a power to terminate or revoke or otherwise directly benefit from the trust. It was accordingly held that the grantors had made themselves trustees and held these administrative powers subject to the ordinary equitable principles governing the conduct of fiduciaries. Thus, despite a subsequent change of heart, the grantors were not permitted to use their reserved investment powers for self-dealing or as an indirect means to milk the trust dry. The principle upon which these cases are based is succinctly stated by Judge Cardozo in the leading Carrier case, as follows (226 N.Y. at pages 125–126, 123 N.E. at page 138):

"It is true that the creator of this trust had reserved to himself the broadest rights of management. His discretion was to be 'absolute and uncontrolled.' That does not mean, however, that it might be recklessly or willfully abused. *He had made himself a trustee;* and in so doing he had subjected himself to those obligations of fidelity and diligence that attach to the office of trustee. He had power to 'invest' the moneys committed to his care. He had no power, *under cover of an investment,* to loan them to himself. His discretion, however broad, did not relieve him from obedience to the great principles of equity which are the life of every trust." (Emphasis supplied.)

The rationale of these cases is further evident from the following statement of the court in the Osborn case (5 N.Y.S.2d at page 215):

"Under the facts shown and the law applicable it would seem that the

reserved investment power, including the change of language in the clause quoted, read with the rest of the trust agreement, must be construed as continuing [sic] a general power in trust and as not giving defendant Osborn a beneficial power or any absolute right in the trust res. *There is no evidence that defendant Osborn intended to reserve to himself any power to enjoy the corpus, and he may not use the power for his own benefit directly or indirectly.* This construction gives full effect to the different provisions of the instrument." (Emphasis supplied.)

See also Heyman v. Heyman, Sup.1942, 33 N.Y.S.2d 235, 242.

■ In the present case the only purpose which the reservation of the power to terminate could have had was to permit Mrs. Fabbri to benefit from the corpus. By its very nature the reservation by a grantor of the power to terminate a trust negatives the existence of a fiduciary relationship, since the only consequence of its execution is the destruction of the trust and the interests of all beneficiaries thereunder. When such a power has been reserved in unequivocal terms, the courts have not hesitated to give it effect. Witherbee v. Commissioner, 2 Cir., 70 F.2d 696, certiorari denied, 1934, 293 U.S. 582, 55 S.Ct. 96, 79 L.Ed. 678; Chandler v. Commissioner, 3 Cir., 1941, 119 F.2d 623. See also Reinecke v. Smith, 1933, 289 U.S. 172, 176–177, 53 S.Ct. 570, 77 L.Ed. 1109; Welch v. Terhune, 1 Cir., 126 F.2d 695, 697–698, certiorari denied, 1942, 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519. As stated by Chief Judge Maris for the Court of Appeals for the Third Circuit in Chandler v. Commissioner, supra, which also involved a New York trust (119 F.2d at pages 625–626):

"We think that the reservation by the settlor of the power to deal with the trust assets for his own benefit is irreconcilable with the fundamental principle underlying all fiduciary relationships that the fiduciary must act solely in the interest of the cestui que trust and, therefore, may not have personal dealings with the trust property. Restatement, Trusts, § 170 and comments thereto. As owner of the assets Chandler, of course, had the right to reserve such a power. His doing so clearly indicates that he did not intend to impose upon himself fiduciary restraints enforcible by the trust beneficiaries."

■ In approaching the decision of the question presently before it, the Court has had firmly in mind that under the law of New York, as under the law elsewhere, the intent of the grantor as manifested in the controlling instrument should govern as far as possible in determining the nature of the interests established thereby. See Pinckney v. City Bank Farmers Trust Co., 3d Dept. 1937, 249 App.Div. 375, 292 N.Y.S. 835, 837; Osborn v. Bankers Trust Co., 1938, 168 Misc. 392, 5 N.Y.S.2d 211; Chandler v. Commissioner, 3 Cir., 1941, 119 F.2d 623; N.Y. Real Prop. Law § 172. Compare Heyman v. Heyman, Sup. 1942, 33 N.Y.S.2d 235; Fifth Ave. Bank of New York v. Nunan, D.C.E.D.N.Y. 1945, 59 F.Supp. 753. This Court cannot, however, accept the statement in plaintiffs' brief that "[t]here is not a scintilla of evidence of any intent on the part of Mrs. Fabbri to create a beneficial power * * *." In fact, from a consideration of the indenture itself the Court can only conclude that Mrs. Fabbri intended to reserve a power which she could exercise for her own exclusive benefit. And in the Court's opinion the intent evidenced in the indenture is confirmed and fortified by the evidence, all of which was introduced by plaintiffs, as to the circumstances surrounding the execution of the indenture and the practical construction given to it by the parties after its execution.

Thus, the indenture contained a power to terminate, upon the exercise of which the principal was to be paid to Mrs. Fabbri during her lifetime. While Mrs. Fabbri lived, any possible benefit through

the exercise of the power could flow only to her. The indenture also reserved to Mrs. Fabbri complete control over the persons who might bring about a termination by giving her the unrestricted right to remove them and to substitute any person subservient to her wishes, including herself. The only conclusion which this Court can draw from the instrument itself is that Mrs. Fabbri never intended to give up ultimate control over the trust corpus or to relinquish the power to get it right back into her own pocket. If necessary, she intended to be able to "wipe the slate clean." The proposition that after setting up this elaborate machinery for her own protection, she nevertheless intended not to be able to benefit from it is patently self-defeating.

If there is any possible ambiguity as to the intent of the grantor as manifested upon the face of the indenture, the undisputed extrinsic evidence introduced at the trial leads to the same conclusion. Osborn v. Bankers Trust Co., 1938, 168 Misc. 392, 5 N.Y.S.2d 211, 214–215. As previously summarized, this evidence reveals that Mrs. Fabbri was a lady of little business judgment or experience, who was accustomed to living beyond her income and was subject to the many demands of her family and charities. Upon recommendation of the family lawyer, Mr. Irwin, a plan was adopted by which she could have all the benefits of the money, yet be one step removed from the invasion of principal. But should the need arise, and Mrs. Fabbri was concerned that it might, she wanted to be able to revest the corpus in herself. Irwin and Clark were to be barriers in her path, but barriers whom she, at her will, could remove. While it was to be a little more difficult to get at the principal than if she had continued in outright ownership, it was to be possible by the simple expedient of replacing these two gentlemen in the event they should not accede to her wishes. It is further apparent from the proposed Episcopal Church endowment that she never intended to put the trust beyond her personal reach. To her the trust was "my" trust. She never intended to give up either the benefit from or the ultimate control of the trust corpus. A construction of her powers under the trust which negatived this benefit and control would run squarely contrary to every objective indicia of her intent.

A final argument made by plaintiffs is that in Application of Irwin, 1959, 17 Misc.2d 494, 187 N.Y.S.2d 875, the Supreme Court for New York County refused the application of Mrs. Fabbri's daughter Teresa, the present life beneficiary, to be substituted for Irwin (who simultaneously successfully applied to the court for permission to resign), and based its decision partly on the ground that under section 141, if the present life beneficiary were substituted, she would be disqualified from exercising the power to terminate the trust in favor of herself. Plaintiffs urge that the court's opinion in that case amounts to a direct holding that the power of termination in the instrument presently before this Court was a power in trust and was subject to section 141. They argue that the opinion of a New York court having jurisdiction over the trust should "carry definite weight" in resolving the issue of New York law on which this remand is based.

The record before this Court reveals that the New York action was instituted during the pendency of the instant proceedings by plaintiffs' present counsel, who represented the petitioning life beneficiary. The life beneficiary sought appointment only on condition that she be held ineligible to participate in the exercise of the power to terminate the trust. The New York court was thus not asked to rule upon the question of whether the present life beneficiary, if appointed, could have exercised the power to terminate, and a careful reading of its brief opinion will indicate that, despite a passing reference to section 141, the New York court did not decide that question. It is therefore unnecessary to pass upon the much controverted question of whether this Court would be

bound by a direct holding of the New York Supreme Court on this question under these non-adversary conditions. See Merchants National Bank & Trust Co. of Indianapolis v. United States, 7 Cir., 246 F.2d 410, certiorari denied, 1957, 355 U.S. 881, 78 S.Ct. 148, 2 L.Ed. 2d 112; Paul, Federal Estate and Gift Taxation § 1.11 (1942 and Supplement).[5]

The end result is that, if Mrs. Fabbri had substituted herself for Irwin, she would not under New York law have been disqualified from exercising, in conjunction with Morris, the power to terminate. It follows that Mrs. Fabbri on the date of her death did have the power in conjunction with any person "to alter, amend, or revoke" the trust within the meaning of section 2038(a)(2) of the Internal Revenue Code of 1954. The trust property is therefore properly includible in her gross estate.

Judgment will be entered for the defendant, with costs.

5. The Court of Appeals for the First Circuit has twice avoided deciding the question. See Third National Bank & Trust Co. of Springfield v. United States, 1 Cir., 1956, 228 F.2d 772; Channing v. Hassett, 1 Cir., 1952, 200 F.2d 514.